MICHAEL CLARK AND PATRICK NEWTON, PETITIONERS V. CITY OF ASHEBORO, A MUNICIPAL CORPORATION; W. JOSEPH TROGDON, MAYOR; DAVID H. SMITH, COUNCILMAN; BARBARA HOCHULI, COUNCILWOMAN; JOHN MCGLOHON, COUNCILMAN; DAVID JARRELL, COUNCILMAN; NANCY HUNTER, COUNCILWOMAN; ARCHIE PRIEST, COUNCILMAN; AND TALMADGE BAKER, COUNCILMAN, RESPONDENTS

No. COA99-240

(Filed 21 December 1999)

**1. Zoning— special use permit—mobile home parks—conditions**

There was ample evidence in the record of a special use permit proceeding that petitioners had satisfied the specific requirements set forth in the ordinance for the development of mobile home parks.

**2. Zoning— special use permit—mobile home parks—injury to adjoining property**

Petitioners seeking a special use permit for the development of a mobile home park complied with a condition in the special use ordinance that the use not substantially injure the value of the adjoining property. Petitioners presented expert testimony through an appraiser that the proposed mobile home park would not result in any substantial diminution of the value of the adjacent property and, except for oblique references in the testimony of several landowners in the vicinity, there was no competent evidence to the contrary.

**3. Zoning— special use permit—mobile home parks—conditions—no material danger to public health or safety**

Petitioners who were seeking a special use permit for a mobile home park met their burden of introducing substantial evidence that the proposed use would not materially endanger the public health or safety. The generalized fears expressed by witnesses were that the mobile home park would be inhabited by lower-income persons who would constitute a danger to the neighborhood and no competent evidence was presented in support of any of the contentions or positions opposing the park.

**4. Zoning— special use permit—mobile home parks—conditions—conformity with area**

Petitioners seeking a special use permit for a mobile home park met their burden of demonstrating compliance with a requirement that the use be in harmony with the area in which it

was to be located and in general conformity with the plan of development of Asheboro. The inclusion of manufactured housing parks in the R40 classification is equivalent to a "legislative finding" that such parks are compatible with other uses permitted in the district and the Council in this case gave no reason for finding that the mobile home park proposed by petitioners would be an incompatible use.

**5. Zoning— special use permit—mobile home parks—findings**

The trial court did not err by concluding that respondents (the Town Council) failed to make adequate findings of fact when denying an application for a special use permit for a mobile home park where the Council appears to have based its contention regarding impact on the neighborhood on a statement by a Council member which was at best conclusory and did not amount to a finding, and which was not based on competent, material, and substantial evidence.

**6. Zoning— special use permit—review by superior court**

The trial court did not err when reviewing the denial of a special use permit for a mobile home park by issuing a decree directing the city to issue the permit where the court properly determined that the denial was not supported by appropriate findings and that there was no competent evidence rebutting the prima facie case made by petitioners.

Appeal by respondents from judgment entered 28 December 1998 by Judge Steve A. Balog in Randolph County Superior Court. Heard in the Court of Appeals 28 October 1999.

On 10 February 1998, Michael Clark and Patrick Newton (the petitioners) filed an application with the City of Asheboro for a special use permit to develop a mobile home park on a 26-acre tract of land owned by Haymes Brothers, Inc. (the property). Petitioners had an option to purchase the property, and no question was raised about their standing to request a special use permit. The Haymes property is located outside the city limits of Asheboro, but is within the extraterritorial jurisdiction of the City of Asheboro and is subject to the City of Asheboro Zoning Ordinance (the Ordinance). On 7 May 1998, the Asheboro City Council (the Council) held a public hearing on petitioners' application. Petitioners offered evidence that they had complied with all conditions set out in the Ordinance, and six persons who reside near the Haymes property made statements in opposition

to petitioners' application. Reynolds Neely, the Planning Director, presented background information including staff recommendations in favor of the application. The Council postponed final action on the application in order for petitioners to prepare a new site plan showing the relocation of certain dumpsters and closing access from the proposed mobile home park to a nearby road. A member of the Council also wanted additional time to view the site and to study the situation of the adjoining homeowners. On 4 June 1998, the Council voted to deny the petitioners' application on the grounds that two necessary conditions had not been met. On 22 June 1998, petitioners petitioned the Superior Court of Randolph County for certiorari, which was allowed. The superior court heard the matter, concluded that the denial of petitioners' application was not based on competent, material and substantial evidence, and ordered that the City of Asheboro issue a special use permit to petitioners. Respondents appealed.

*Gavin, Cox, Pugh, Etheridge and Wilhoit, L.L.P., by Alan V. Pugh, for petitioner appellees.*

*Smith & Alexander, L.L.P., by Archie L. Smith, Jr., for respondent appellants.*

HORTON, Judge.

The North Carolina Constitution provides that the "General Assembly shall provide for the organization and government and the fixing of boundaries of counties, cities and towns, and other governmental subdivisions, and . . . may give such powers and duties to counties, cities and towns and other governmental subdivisions as it may deem advisable." N.C. Const. Art. VII, § 1. Pursuant to this constitutional provision, our legislature has delegated its zoning powers to the various municipalities located throughout the State. N.C. Gen. Stat. § 160A-381(a) provides that:

For the purpose of promoting health, safety, morals, or the general welfare of the community, any city may regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes and to provide density credits or severable development rights for dedicated rights-of-way pursuant to G.S. 136-66.10 or G.S. 136-66.11. These

regulations may provide that a board of adjustment may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained. The regulations may also provide that the *board of adjustment or the city council may issue special use permits or conditional use permits* in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified therein and may impose reasonable and appropriate conditions and safeguards upon these permits.

*Id.* (Cum. Supp. 1998) (emphasis added).

Here, petitioners applied for a special use permit, which our Supreme Court has defined as " 'one issued for a use which the ordinance expressly permits in a designated zone upon proof that certain facts and conditions detailed in the ordinance exist.' " *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 623, 265 S.E.2d 379, 381 (citation omitted), *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980).

Pursuant to N.C. Gen. Stat. § 160A-381, the Asheboro City Council created a zoning ordinance to regulate the use of land located within the municipality of Asheboro. The Asheboro Zoning Ordinance includes a "Special Uses" section titled "Article 600," which provides guidelines for obtaining a special use permit.

Article 600 provides that one who wishes to obtain a special use permit must first submit an application to the zoning administrator. The planning director then prepares an analysis of the application for consideration by the City Council. The zoning administrator then gives public notice of a hearing before the Council regarding the applicant's request for a special use permit. At the hearing, the Council is to receive evidence in the form of testimony and documents in support of the application for the special use permit. In an effort to persuade the Council, the applicant must satisfy four "General Standards" for approval of a special use permit:

1. That the use will not materially endanger the public health or safety if located where proposed and developed according to the plan as submitted and approved.

2. That the use meets all required conditions and specifications.

3. That the use will not substantially injure the value of adjoining or abutting property, or that the use is a public necessity, and,

4. That the location and character of the use if developed according to the plan as submitted and approved will be in harmony with the area in which it is to be located and in general conformity with the plan of development of Asheboro and its environs.

The Ordinance provides further that the Council make "general findings based upon substantial evidence contained in its proceedings." The Ordinance also provides that Council make a decision following the hearing, either to approve the application, approve it with conditions attached, or deny it.

If the Council denies the application, its decision "shall be subject to review by the superior court by proceedings in the nature of certiorari." N.C. Gen. Stat. § 160A-381(c) (Cum. Supp. 1998). Our Supreme Court has defined the role of the superior court in reviewing a decision of a city council:

[I]t is clear that the task of a court reviewing a decision on an application for a conditional use permit made by a town board sitting as a quasi-judicial body includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

. . . .

In reviewing the sufficiency and competency of the evidence at the appellate level, the question is not whether the evidence before the superior court supported that court's order *but whether the evidence before the town board was supportive of its action.* In proceedings of this nature, the superior court is not the trier of fact. Such is the function of the town board. *The trial court, reviewing the decision of a town board on a conditional use permit application, sits in the posture of an appellate court.*

The trial court does not review the sufficiency of evidence presented to it but reviews that evidence presented to the town board.

*Concrete Co.*, 299 N.C. at 626-27, 265 S.E.2d at 383 (emphasis added) (citations omitted).

The "arbitrary and capricious" standard applies, among other things, to a town council's refusal of a request for a mobile home park. The Council "cannot deny applicants a permit in their unguided discretion or, stated differently, refuse it solely because, in their view, a mobile-home park would 'adversely affect the public interest.' " *In re Application of Ellis*, 277 N.C. 419, 425, 178 S.E.2d 77, 81 (1970) (citation omitted). Further, the Council "must also proceed under standards, rules, and regulations, uniformly applicable to all who apply for permits." *Id.* Therefore, in making a decision on an application for a special use permit, the Council may not arbitrarily violate its own rules, but must comply with the provisions of its Ordinance. *See Refining Co. v. Board of Aldermen*, 284 N.C. 458, 467, 202 S.E.2d 129, 135 (1974). Compliance with the Ordinance provisions ensures that each application for a special use permit will be considered on its own merits, and not granted or denied based on improper or irrelevant factors. It also allows some predictability of future use to persons who invest in real property.

Here, respondent City contends the trial court erred in concluding as a matter of law that petitioners presented competent, material and substantial evidence establishing their compliance with the preconditions of the Ordinance relating to the issuance of a special use permit. We note that the issue of whether "competent, material and substantial evidence" is present in the record is a conclusion of law. "Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *State ex rel. Long v. ILA Corp.*, 132 N.C. App. 587, 591, 513 S.E.2d 812, 816 (1999). The "competent, material and substantial evidence" standard is part of a test adopted by our Supreme Court, which

outlined the two-step decision-making process the town had to follow in granting or denying an application for a special use permit:

(1) When an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the

issuance of a special use permit, *prima facie* he is entitled to it. (2) A denial of the permit should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.

*Concrete Co.*, 299 N.C. at 625, 265 S.E.2d at 382 (citations omitted). Here, the superior court concluded that:

2. The Petitioners in this cause presented competent, material and substantial evidence establishing facts sufficient to meet all four general standards set out in Section §602 as well as the specific standards set out in Section §629 of the Asheboro City Zoning Ordinance necessary for the issuance of a special use permit.

3. The evidence presented contra to Petitioners' application was insufficient to support Respondents' denial of Petitioners' application for a special use permit, and therefore said denial was not supported by competent, material and substantive evidence contra.

4. The Respondents failed to follow the procedures specified in case law by failing to make findings of fact based on the evidence presented necessary to support its[] conclusions that one or more of the general standards in its ordinance were not met, nor sufficient to allow this Court to review the application by Respondents of such facts to the ordinance had such facts existed.

In order to review properly the judgment of the superior court, we must determine whether petitioners produced competent, material and substantial evidence to show their compliance with the four general conditions of Article 602 of the Ordinance, so that they are *prima facie* entitled to issuance of a special use permit. If we determine that petitioners were *prima facie* entitled to a permit, we must then determine whether there was competent, material and substantial evidence in opposition to their application upon which Council could base a denial of the special use permit.

[1] Before addressing conditions No. 1 and No. 4 of the Ordinance, both of which were the Council's basis for denial of the permit, we hold that it is clear from the record that petitioners introduced competent, material and substantial evidence to demonstrate their compliance with conditions numbered 2 and 3. An applicant meets General Standard No. 2 by complying with the provisions of Section

629 of Article 600, which provides numerous additional regulations for the development of mobile home parks. Section 629 regulates parking, lot size, and water and sewer service, among other things. There is ample evidence in the record that petitioners satisfied the specific requirements set forth in Section 629, and it appears from the testimony of the Planning Officer and the concession of counsel that petitioners' compliance with this standard is not contested.

[2] Petitioners also complied with condition No. 3, which provides that the special use not "substantially injure the value of adjoining or abutting property . . . ." Petitioners presented expert testimony through a real estate appraiser who testified that the proposed mobile home park would not result in any substantial diminution of the value of the property adjacent to it. In forming his opinion, the appraiser also studied other mobile home parks, and the effects of their establishment on the values of surrounding property. Except for oblique references in the testimony of several landowners in the vicinity of the property in question, there is simply no competent evidence to the contrary. Further, although respondent devotes a portion of its argument to whether petitioners complied with condition No. 3, failure to comply with that condition was not a basis for the decision by the Council.

[3] The Council denied petitioners' application based on their alleged failure to comply with conditions No. 1 and No. 4 of the General Standards. The minutes of the Council hearing reflect the following action:

> Mr. Priest moved that the request for a Special Use Permit for a mobile home park be denied because he felt that Condition Nos. 1 and 4 were not met (will endanger public health or safety and will not be in harmony with the neighborhood). Mrs. Hunter seconded the motion. Council Members Jarrell, McGlohon, and Smith voted for the motion. Mr. Baker voted against the motion. The motion carried. (Mrs. Hochuli was absent).

We disagree with respondents' contention that petitioners did not meet their burden of introducing substantial evidence demonstrating that the proposed use would not materially endanger the public health or safety as required by general standard no. 1. Petitioners' plan for a mobile home park provided for treated city water, city sanitary sewage, regular garbage pickup, street standards and recreation. Petitioners agreed to extend water and sewer services to the area. The mobile home park would be buffered around its perimeter, and

would be surrounded in part by an 8-foot solid wooden fence. Plans included an on-site manager for the park. The park would be "practically invisible" from Gold Hill Road, and there would be no access to Cedar Falls Road at all. The increased traffic on Gold Hill Road, a major thoroughfare, would be well within the projections of the Department of Transportation.

Six persons testified in opposition to the establishment of the mobile home park in their area. Their evidence was primarily an expression of their fears that the mobile home park would be an "eyesore," and would bring crime and increased traffic. For example, one witness testified that she was "horrified at the . . . idea of a quiet community being invaded by eighty-six mobile homes . . ." and felt they were being "targeted because we are not in the upper income level . . . ." Another witness testified that "usually trailer parks bring trouble . . . ." Several persons felt that persons from the mobile home park would come and go through their backyards, and their personal property would be at risk of theft. Another witness expressed that the mobile home park would bring "drugs and alcohol . . . and prostitution" would accompany establishment of the mobile home park. An unidentified male person who may have been one of the sworn witnesses felt that even a solid wooden fence 8-feet tall would not prevent the "criminals" from getting through. Thus, the generalized fears expressed by the witnesses were that the mobile home park would be inhabited by lower-income persons who would constitute a danger to the neighborhood. No competent evidence was presented, however, in support of any of the contentions or positions of witnesses opposing the mobile home park.

[4] We also hold that petitioners met the burden of demonstrating compliance with General Standard No. 4, which requires that a use be in harmony with the area in which it is to be located and in general conformity with the plan of development of Asheboro. The property on which petitioners plan their mobile home park is located within the R40 district, a classification which permits manufactured housing parks. Petitioners argue, and we agree, that the inclusion of manufactured housing parks in the R40 district is equivalent to a "legislative finding" that such parks are compatible with other uses permitted in the district. *Woodhouse v. Board of Commissioners*, 299 N.C. 211, 216, 261 S.E.2d 882, 886 (1980); *see also, Book Stores v. City of Raleigh*, 53 N.C. App. 753, 281 S.E.2d 761 (1981). Here, the Council gave no reason for finding that the mobile home park proposed by petitioners would be a use incompatible with the other uses of prop-

erty in the R40 district, and exceeded its authority by doing so. Such an action constituted "an unlawful exercise of legislative power by the Board . . . in violation of Article II, Section I, of the Constitution of North Carolina." *Keiger v. Board of Adjustment*, 278 N.C. 17, 23, 178 S.E.2d 616, 620 (1971). Thus, as in *Book Stores*, petitioners

> produced substantial evidence of the facts and conditions required for issuance of the permit. No evidence to the contrary was presented. There was thus no basis for findings denying the permit, and the permit should have been granted.

*Book Stores*, 53 N.C. App. at 758, 281 S.E.2d at 764.

**[5]** Respondents contend the trial court erred in concluding as a matter of law that respondents failed to make adequate findings of fact to support denial of the special use application. As previously stated in our citation of *Concrete*, a " 'denial of the permit should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.' " *Concrete* Co., 299 N.C. at 625, 265 S.E.2d at 382. Also, the "General Standards" provision of the Ordinance provides: "The City Council shall make these general findings based upon substantial evidence contained in its proceedings." Respondents appear to base their contention on a statement made by Mr. Archie Priest, one of the Council members who moved to deny the petitioners' application:

> [MR. PRIEST]: Mr. Mayor, I make a motion we deny this request.

> THE MAYOR: Based on—Based on—

> [MR. PRIEST]: I haven't had anything brought to our attention about safety, and I agree with David [Smith, Councilman] a hundred percent, the impact it's going to take on the neighborhood.

The Council then voted to deny petitioners' request. The statement from Councilman Priest is at best conclusory, and does not amount to a finding of fact. Further, the statement by the Councilman is not based on competent, material and substantial evidence in the record on the issues of safety and conformity with other uses in the area in question. We hold that the trial court did not err in concluding that respondents failed to make adequate findings of fact to support denial of the special use application.

**[6]** Finally, respondents contend the superior court's judgment was not supported by the record. Upon the review by a superior court

upon writ of certiorari issued pursuant to N.C. Gen. Stat. § 160A-381, the superior court may vacate an order based on findings of fact not supported by the evidence, and may give relief from an order of the Board which is found to be " 'arbitrary, oppressive or attended with manifest abuse of authority.' " *Godfrey v. Zoning Bd. of Adjustment*, 317 N.C. 51, 55, 344 S.E.2d 272, 274 (1986) (citation omitted). Here, the superior court properly determined that the decision of the Board was not supported by appropriate findings, that there was no competent evidence which rebutted the *prima facie* case made by petitioners, and properly reversed the decision of the Board. The superior court then issued a decree directing the City of Asheboro to issue a special use permit to petitioners. The trial court's directive is consistent with previous decisions of our Supreme Court and this Court. *See, for example, Ellis*, 277 N.C. at 426, 178 S.E.2d at 81 ("The judgment . . . is reversed, and the cause is remanded to the Superior Court for entry of judgment directing the commissioners to issue the special-exception permit for which appellants applied."). *See also, Book Stores*, 53 N.C. App. at 759, 281 S.E.2d at 764-65 ("The judgment is reversed, and the cause is remanded for entry of judgment directing the Board of Adjustment to issue the special use permit.").

Affirmed.

Judges McGEE and EDMUNDS concur.