SUN SUITES HOLDINGS, LLC, AND W.W.T., A NORTH CAROLINA GENERAL PARTNERSHIP, PETITIONERS v. THE BOARD OF ALDERMEN OF THE TOWN OF GARNER, RESPONDENTS, AND JEAN ADAMS; RICK BUNN AND ELENI BUNN; JANE CALDWELL; ANTHONY CAMERANO AND BARBARA CAMERANO; RUTH GOSS; EDWARD GUERRIERO AND KRISTA GUERRIERO; DAN LEONARD; PINEWINDS APARTMENT ASSOCIATES, INC.; GLORIA TARKENTON; AND ANDREW VINAL AND CATHY VINAL, INTERVENORS/RESPONDENTS

No. COA99-450

(Filed 1 August 2000)

**1. Zoning— conditional use permit—hotel—scope of review**

Although the Court of Appeals is unable to conclude the trial court exercised the appropriate scope of review based on the clear language of the order reflecting that it applied both the whole record review and de novo review simultaneously to the issues raised in a case where petitioners filed an application for a conditional use permit for the development of an extended-stay hotel, a remand of the case is unnecessary since petitioners raise only the issue of whether the Board's denial of the application was supported by the record, and the whole record fails to reflect that the Board's decision was sustained by substantial evidence.

**2. Zoning— conditional use permit—hotel—material danger to public health or safety**

The Board's decision to deny petitioners' application for a conditional use permit for the development of an extended-stay hotel based on a statement in the notice of denial that the project would materially endanger the public health or safety is not supported by substantial evidence in the record, because: (1) the limited statistical information comparing a similar extended-stay hotel in the area failed to exclude alternative potential causes of increased calls to police in that sector; (2) speculative comments of neighborhood residents relating their generalized fears and impressions that traffic and crime would be affected by the project cannot be characterized as substantial evidence; and (3) a mere increase in traffic does not necessarily mean an intensification of traffic congestion or a traffic hazard.

**3. Zoning— conditional use permit—hotel—value of adjoining or abutting property**

The Board's decision to deny petitioners' application for a conditional use permit for the development of an extended-stay

hotel based on a statement in the notice of denial that the value of adjoining or abutting property would be substantially injured is not supported by substantial evidence in the record, because speculative opinions by residents indicating that their willingness to purchase homes in the area would have been affected had the project been completed at the time of their purchases are incompetent evidence in the absence of any factual data or background such as certified appraisals or market studies.

Appeal by petitioners from order filed 16 March 1999 by Judge A. Leon Stanback, Jr., in Wake County Superior Court. Heard in the Court of Appeals 13 January 2000.

*Kennedy, Covington, Lobdell & Hickman, L.L.P., by Lacy H. Reaves, A. Lee Hogewood, III, and Margaret R. Westbrook, for petitioners-appellants.*

*McDaniel, Anderson & Stephenson, L.L.P., by William E. Anderson, for respondents-appellees Board of Alderman of the Town of Garner.*

*Holt, York, McDarris, L.L.P., by Clyde Holt, III, and Jeffrey P. Gray, for intervenors/respondents-appellees.*

JOHN, Judge.

Petitioners Sun Suites Holdings, LLC (Sun Suites), and W.W.T., a North Carolina General Partnership, appeal the trial court's order affirming the denial by respondent Board of Aldermen of the Town of Garner (the Board) of petitioners' application (the application) for a conditional use permit (the permit). We reverse and remand with instructions.

Pertinent facts and procedural history include the following: Petitioners desired to build a Sun Suites hotel (the project), an extended-stay facility, on property located near the intersection of Highway 401 and Pine Winds Drive (the project site) in Garner. To gain approval for the project from the Town of Garner (the Town), petitioners were required, pursuant to the Town's Land Use Ordinance (the Ordinance), to obtain the permit, and petitioners filed the application 2 September 1998. On 12 October 1998, the Town Planning and Appearance Commission reviewed the application and voted to recommend its approval, subject to a condition irrelevant to the instant appeal.

A public hearing on the application was conducted 2 November 1998 (the public hearing). The Board heard from a member of the Town's staff; from petitioners' attorney, Lacy Reaves; from the President of Sun Suites, Robert Henritze; and from twenty residents of neighborhoods located near the project site. At the conclusion of the hearing, the Board voted to deny the application. Petitioners were thereafter formally served with notice (the Notice) the application had been denied

> because, if completed as proposed, the development more probably than not:
>
> 1) Will materially endanger the public health or safety.
>
> 2) Will substantially injure the value of adjoining or abutting property.

Petitioners timely sought issuance of a writ of certiorari allowing judicial review by the superior court, *see* N.C.G.S. § 160A-381(c) (1999), which writ issued 30 November 1998. On 22 February 1999, Jean Adams, Rick and Eleni Bunn, Jane Caldwell, Anthony and Barbara Camerano, Ruth Goss, Edward and Krista Guerriero, Dan Leonard, Gloria Tarkenton, and Andrew and Cathy Vinal (collectively intervenors) filed a "Motion to Intervene as Respondents" (the Motion). After receiving briefs, hearing argument from all parties, and finding that intervenors were "aggrieved parties with special damages," the trial court granted the Motion 2 March 1999, and also ordered that Pinewinds Apartment Associates, Inc., be included as an intervenor.

Thereafter, by order filed 16 March 1999 (the Order), the trial court affirmed the Board's decision to deny the application. Petitioners timely appealed to this Court, contending in pertinent part that the trial court erred by applying an improper standard of judicial review and in finding that the decision of the Board was supported by competent, substantial and material evidence in the record.

A legislative body such as the Board, when granting or denying a conditional use permit, sits as a quasi-judicial body. *Refining Co. v. Board of Aldermen*, 284 N.C. 458, 469, 202 S.E.2d 129, 136-37 (1974). In such capacity, its decisions "shall be subject to review by the superior court by proceedings in the nature of certiorari," G.S. § 160A-381(c), in which "the superior court sits as an appellate court, and not as a trier of facts," *Tate Terrace Realty Investors, Inc. v.*

*Currituck County*, 127 N.C. App. 212, 217, 488 S.E.2d 845, 848, *disc. review denied*, 347 N.C. 409, 496 S.E.2d 394 (1997).

Although not specifically applicable, the provisions of the Administrative Procedure Act (APA) are "highly pertinent" to the process described above. *Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 625, 265 S.E.2d 379, 382 (1980). Accordingly, the task of the trial court in reviewing action upon a conditional use permit by a local board functioning as a quasi-judicial body includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Id.* at 626, 265 S.E.2d at 383.

If a petitioner contends the Board's decision was based on an error of law, "de novo" review is proper. However, if the petitioner contends the Board's decision was not supported by the evidence or was arbitrary and capricious, then the reviewing court must apply the "whole record" test.

*JWL Invs., Inc. v Guilford County Bd. of Adjust.*, 133 N.C. App. 426, 429, 515 S.E.2d 715, 717 (citation omitted), *disc. review denied*, 351 N.C. 357, —— S.E.2d —— (1999). Moreover,

[t]he trial court, when sitting as an appellate court to review a [decision of a quasi-judicial body], must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review.

*Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 342 (1999).

Upon further appeal to this Court, we

must examine "the trial court's order for error of law" just as with any other civil case.

*Tate Terrace,* 127 N.C. App. at 219, 488 S.E.2d at 849 (quoting *Amanini v. N.C. Dept. of Human Resources,* 114 N.C. App. 668, 675, 443 S.E.2d 114, 118 (1994)).

> The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.

*Amanini,* 114 N.C. App. at 675, 443 S.E.2d at 118-119, *cited with approval in ACT-UP Triangle v. Commission for Health Services,* 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997).

**[1]** Petitioners contended in the trial court and primarily complain to this Court that the Board's denial of the application was not supported by record evidence.

> A review of whether the [quasi-judicial body's] decision is supported by sufficient evidence . . . requires the court to employ the whole record test.
>
> . . . .
>
> The "whole record" test requires the reviewing court to examine all the competent evidence . . . which comprise[s] the "whole record" to determine if there is substantial evidence in the record to support the [quasi-judicial body's] findings and conclusions.

*Ellis v. N.C. Crime Victims Compensation Comm.,* 111 N.C. App. 157, 162, 432 S.E.2d 160, 163-64 (1993). Substantial evidence is "that which a reasonable mind might accept as adequate to support a conclusion," *Tate Terrace,* 127 N.C. App. at 218, 488 S.E.2d at 849, and "is more than a scintilla or a permissible inference," *Wiggins v. N.C. Dept. of Human Resources,* 105 N.C. App. 302, 306, 413 S.E.2d 3, 5 (1992).

> The Order contains the statement
>
> [t]hat this [c]ourt conducted a *de novo* review of this matter and applied the "whole record" test . . . .

It therefore appears, as described in the Order, that the standard of review utilized by the trial court encompassed concurrent application of both *de novo* review and the "whole record" test. A court may properly employ both standards of review in a specific case, *see In Re*

*Appeal by McCrary,* 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993) (more than one standard of review may be used if required by issues raised), but the standards are to be applied separately to discrete issues, *see Ellis,* 111 N.C. App. at 162, 432 S.E.2d at 164 (applying "whole record" review to two issues raised by petitioner and *de novo* review to remaining issue).

Although the trial court likely intended to comply with the foregoing rules, the clear language of the Order reflects that it applied both standards of review simultaneously to the issues raised in the instant case. We thus are unable to conclude the court "exercised the appropriate scope of review." *Amanini,* 114 N.C. App. at 675, 443 S.E.2d at 118-119.

Such determination might well require remand of the case to the trial court for its application of the proper standard of review. *See Sutton,* 132 N.C. App. at 389, 511 S.E.2d at 342 (order vacated and case remanded where order failed to specify standards of review and trial court's application thereof). In the case *sub judice,* however, petitioners raise only the issue of whether the Board's denial of the application was supported by the record, the entirety of which is before us. In the interests of judicial economy, therefore, we conclude remand in the case *sub judice* is unnecessary because the "whole record" fails to reflect that the Board's decision was sustained by "substantial evidence," *see Ellis,* 111 N.C. App. at 162, 432 S.E.2d at 164.

The Notice recited that petitioners' application was "complete" and complied "with all applicable requirements" of the Ordinance. Upon such determination, § 58(3) of the Ordinance was triggered, requiring the Board to issue the permit absent "specific findings, based upon the evidence submitted, justifying" denial of the application. Section 54(d) of the Ordinance sets out permissible bases upon which a permit might be denied, and the Notice recited verbatim two reasons listed therein as grounds for the Board's decision, *i.e.,* "material endanger[ment of] the public health or safety" and "substantial[] injur[y to] the value of adjoining or abutting property."

Preliminarily, we observe that

in allowing or denying the application, [the quasi-judicial body must] state the basic facts on which it relied with sufficient specificity to inform the parties, as well as the court, what induced its decision.

*Refining Co.*, 284 N.C. at 471, 202 S.E.2d at 138. Assuming *arguendo* the sparse recitation in the Notice complied with this requirement, we contrast the contents of the record with the grounds for denial of the application designated in the Notice.

The "whole record" before the Board consisted of the application and the comments directed to the Board at the public hearing. The only information contained therein relating to the first basis for denial, *i.e.*, that the project would "materially endanger the public health or safety," consisted of assertions by certain individuals of a possible increase in traffic or crime in the area surrounding the project site.

[2] Reviewing the statements to the Board, we first observe that petitioners' attorney and its president indicated that the three hundred to three hundred and fifty daily vehicle trips the project was expected to generate were "substantially less . . . than any other type of retail operation that could be put" on the site; that a security guard would be present at the facility each night from 11:00 p.m. until 7:00 a.m.; that security cameras would be operated twenty-four hours a day; and that the hotel would not have a lounge or restaurant facility. Jenny Saldi (Saldi) of the Town's planning staff pointed out that petitioners' plan was "consistent with . . . the [Town's] Thoroughfare Plan" and all other applicable requirements.

In opposing the project, twenty Garner residents generally expressed their fear of heightened traffic and increased crime in their neighborhoods. The residents maintained that traffic was an existing problem in the area. Several complained that motorists often attempted to cut through the surrounding neighborhoods to travel from Highway 401 to Highway 70 and often exceeded the posted speed limit.

Comments made by David Dicken (Dicken) are illustrative. After expressing his belief that the project would only exacerbate present traffic problems, Dicken suggested that patrons of the hotel might purchase alcohol at a local store,

> [t]ake it on down there [to the hotel] and drink it, get drunk in that room, get out and take a walk in the neighborhood. . . . What is to keep them from walking around in the apartment complex? . . . Drunk and disorderly, you never know. . . . [T]hese individuals are transients, they have no vested interest in our community . . . . [As for petitioners' plans for security cameras,

such cameras] record[] crimes that have occurred. It does not stop the crime.

The extended-stay nature of the proposed hotel and the type of clientele it was anticipated to attract also drew comment. Several speakers, including Dicken, made reference to another extended-stay hotel facility in Garner named "Suburban Lodge" and urged the Board not to approve petitioners' facility in light of problems alleged to have occurred at Suburban Lodge.

For example, Carol Harris asserted she had observed "transients" currently walking "through [her] neighborhood at all hours" and that "another low rent extended stay hotel . . . would be very detrimental to [the] community." Intervenor Ed Guerriero (Guerriero) stated he had "collected some information from the Garner Police Department" indicating five hundred and two (502) calls to police during the first six months of 1998 from the "sector" containing Suburban Lodge, and during the same period in 1996, which was prior to construction of Suburban Lodge, only three hundred thirty-two (332) calls emanating from the same sector. Guerriero further cited data delineating that one of the four total 1998 assault calls came from Suburban Lodge. Similarly, of four calls for drug possession and of four calls for domestic disturbance in 1998, one in each category was initiated at Suburban Lodge. Finally, the only two calls regarding harassment came from Suburban Lodge as well as the solitary prostitution complaint.

This Court has recently emphasized that speculative assertions or mere expression of opinion about the possible effects of granting a permit are insufficient to support the findings of a quasi-judicial body. *C.C. & J. Enter., Inc. v. City of Asheville*, 132 N.C. App. 550, 553, 512 S.E.2d 766, 769, *disc. review improvidently allowed*, 351 N.C. 97, 521 S.E.2d 117 (1999). Further, the expression of "generalized fears" does not constitute a competent basis for denial of a permit. *See Clark v. City of Asheboro*, 136 N.C. App. 114, 122, 524 S.E.2d 46, 51-52 (1999).

Petitioners at this point also interject that Guerriero's testimony was not material. *See Concrete Co.*, 299 N.C. at 625, 265 S.E.2d at 383 (evidence supporting decision of local board must be "competent, material, and substantial"); *see also* Black's Law Dictionary 991 (7th ed. 1999) (material defined as "[h]aving some logical connection with the consequential facts"). We agree that other than the alleged circumstance that both the project and Suburban Lodge constitute

"extended-stay" hotels, no evidence was presented suggesting any relevant similarities between the two. Consideration of any perceived projected increase in crime resulting from the construction of Suburban Lodge was thus at best of highly limited assistance to a determination of the impact of a Sun Suites hotel on the community. *See id.* (material also defined as being "[o]f such a nature that knowledge of the item would affect a person's decision making process; significant"). In addition, Guerriero's data failed to exclude, nor did other commentary before the Board address, alternative potential causes of increased calls to police in the Suburban Lodge "sector," such as commercial or residential growth.

Given the limitations on Guerriero's statistical information noted above, therefore, we cannot conclude it qualifies as "substantial evidence," such that "a reasonable mind" could accept it "as adequate to support a conclusion," *Tate Terrace*, 127 N.C. App. at 218, 488 S.E.2d at 849, that the project would result in increased crime such that, in the words of the Notice, "the public health or safety" would be "materially endanger[ed]." Similarly, the speculative comments of neighborhood residents relating their "generalized fears," *Clark*, 136 N.C. App. at 122, 524 S.E.2d at 51-52, and impressions that traffic and crime would be affected by the project cannot be characterized as "substantial" evidence and were insufficient to support the Board's decision, *see C.C. & J. Enter.*, 132 N.C. App. at 553, 512 S.E.2d at 769.

In addition, although petitioners acknowledged to the Board that the project would likely result in three hundred to three hundred and fifty additional trips per day, Saldi noted the project nonetheless complied with the Town's "Thoroughfare Plan." Further, a mere

> increase in traffic does not necessarily mean an intensification of traffic congestion or a traffic hazard,

*Refining Co.*, 284 N.C. at 469, 202 S.E.2d at 136, that would "materially endanger the public . . . safety" under § 54(d) of the Ordinance.

In short, the statement in the Notice that the project would "materially endanger the public health or safety" is not supported by "substantial" evidence in the record. Consequently, the Board's decision to deny the application may not be upheld on that basis. *See Ellis*, 111 N.C. App. at 163, 432 S.E.2d at 164.

[3] We next consider whether the record sustains the statement in the Notice that the project would "substantially injure the value of

adjoining or abutting property." During the hearing, two speakers touched on the issue of property values. Intervenor Andrew Vinal (Vinal) related that if he had known a hotel was going to be built at the project site,

> [t]hat would have influenced my decision of living in this area. Therefore I would assume that it would affect other homeowners in the future that would want to buy my home . . . . Therefore, I feel this would devalue my property . . . .

Paul Capps (Capps), a real estate agent, although not a resident of the area immediately surrounding the project site, stated that

> I have been selling in Garner . . . for several years. I have a lot of friends and . . . clients in the neighborhood and I am concerned . . . . I feel like the property values are going to go down [in the neighborhood].

Again, speculative opinions such as the foregoing fail to constitute substantial evidence. *See C.C. & J. Enter.*, 132 N.C. App. at 553, 512 S.E.2d at 769. Moreover, testimony by residents indicating that "their willingness to purchase homes in the area would have been affected had the . . . project been completed at the time of their purchases," *Piney Mt. Neighborhood Assoc. v. Town of Chapel Hill*, 63 N.C. App. 244, 252, 304 S.E.2d 251, 256 (1983), and

> opinions by residents of the area that the value of neighboring property would be adversely affected by the . . . project, . . . insofar as they are "conclusions unsupported by factual data or background, are incompetent and insufficient to support the [quasi-judicial body's] findings,"

*id.* at 252-53, 304 S.E.2d at 256 (citing *Refining Co.*, 284 N.C. at 469, 202 S.E.2d at 136). While Capps may have been qualified by virtue of his profession, neither he nor Vinal presented any "factual data or background," such as certified appraisals or market studies, supporting their naked opinions. *Refining Co.*, 284 N.C. at 469, 202 S.E.2d at 136.

We note also that the Ordinance predicates denial of a permit application upon evidence that "the value of *adjoining or abutting* property" would be "substantially injure[d]." Ordinance, § 54(d) (emphasis added). Thorough review of the record on appeal reveals that neither Capps' property nor Vinal's property adjoins or abuts the

project site. Capps' single generalized statement about values in the unspecified "neighborhood," and Vinal's comments that presence of the project would have influenced his decision to purchase property, thus were not "material," *see* Black's Law Dictionary at 991, to the issue of the effect of the project upon the value of adjoining and abutting property, and in any event did not constitute "substantial" evidence. Finally, although two residents of Pine Winds Drive who live across from the project site spoke at the hearing, they did not address property values.

In short, the statement in the Notice that the "value of adjoining or abutting property" would be "substantially injure[d]" is not supported by substantial evidence appearing in the record, *Ellis*, 111 N.C. App. at 162, 432 S.E.2d at 164, and the Board's denial of the application may not be upheld on that basis.

In the absence of "substantial evidence" in the "whole record," *id.*, to support either of the Board's bases for denial of petitioners' application as indicated in the Notice, and given the unchallenged determination that petitioners had complied with "all applicable requirements" of the Ordinance,

> the reviewing body must grant the [conditional] use permit; failure to do so when the applicant fully complies with specified standards is arbitrary as a matter of law,

*C.C. & J. Enter.*, 132 N.C. App. at 553, 512 S.E.2d at 769; *see also* Ordinance, § 58(3) (if Board finds application is complete and complies with Ordinance, it "shall issue the permit").

Prior to concluding, we note the Board apparently anticipated that lack of appropriate evidence in the instant record might indeed require the result reached herein. Comments of several residents contained in the record reveal they had been advised of the necessity of making a presentation to the Board grounded upon factual evidence, but that they had declined to obtain appraisals or other documentation in support of their assertions. Although a few residents urged the Board to delay its decision to allow more evidence to be gathered, the vote was taken immediately. At the close of the public hearing, Alderman Graham Singleton warned residents who opposed the project and desired an immediate vote to "be careful what you ask for because you might get it." When asked to clarify his statement, he replied, "if the courts overturn our decision . . . [petitioners] will be allowed to build as presented in this package tonight."

To summarize, the Board improperly denied petitioners' application and the trial court erred in affirming that decision. The trial court's judgment is therefore reversed and this matter remanded to that court for subsequent remand to the Board with direction to issue the requested conditional use permit to petitioners. *See Clark*, 136 N.C. App. at 124, 524 S.E.2d at 52-53 (reversing Board's decision to deny application for special use permit and directing city to issue permit). Because of this disposition of petitioners' appeal, it is unnecessary to examine their remaining assignments of error.

Reversed and remanded with instructions.

Judges McGEE and HUNTER concur.