PAM AND DAN McDONALD; ALEX PORTER, JR., PATRICIA ANN HYDE; H. EDWARD EUBANKS; JR. RICHARD THOMASON; FORREST AND TRACY BALLARD; PATRICK C. QUINN; AND KIP AND FAITH LYON, PETITIONERS V. CITY OF CONCORD, RESPONDENT

No. COA07-113

(Filed 15 January 2008)

**1. Cities and Towns— conditional use permit—construction of correctional facility—whole record test**

The trial court did not err by affirming the City of Concord's grant of a conditional use permit (CUP) to Cabarrus County for the construction of a Law Enforcement Center (LEC), including a jail, adjacent to downtown Concord based on its determination that the City had presented competent, material, and substantial

McDONALD v. CITY OF CONCORD

[188 N.C. App. 278 (2008)]

evidence that the planned LEC met the City's ordinance standard relating to its conforming with the surrounding residential homes, because: (1) the LEC will conform in use inasmuch as many of the buildings in the neighborhood involve governmental activities; (2) witnesses testified that the jail and the sheriff's office is and has historically been located in downtown Concord adjacent to the courthouse and has always been a member of the neighborhood; (3) the portion of the LEC that is zoned as residential compact, immediately adjacent to some of petitioners' homes, will not be developed; (4) testimony was presented that the historical use, size, and style of the proposed buildings match the existing buildings in the city center zoning district; and (5) the whole record test does not allow the reviewing court to replace the board's judgment as between two reasonably conflicting views even though the court could justifiably have reached a different result had the matter been before it de novo.

**2. Cities and Towns— conditional use permit—construction of correctional facility—arbitrary and capricious standard**

The City Council's decision granting a conditional use permit to Cabarrus County for the construction of a Law Enforcement Center, including a correctional facility, adjacent to downtown Concord was not arbitrary or capricious because: (1) there was no evidence the Council's decision was whimsical or taken in bad faith; (2) the Council held a hearing on the issue where it received sworn testimony and evidence; and (3) the fact that the evidence could have supported a different outcome does not lend support to petitioners' argument that the Council acted in an arbitrary and capricious manner.

Appeal by petitioners from an order entered 30 October 2006 by Judge Robert C. Ervin in Cabarrus County Superior Court. Heard in the Court of Appeals 9 October 2007.

*Smith Moore, L.L.P., by Thomas E. Terrell Jr. and Travis W. Martin, for petitioner-appellants.*

*The Brough Law Firm, by Michael B. Brough; Concord City Attorney Albert Benshoff, for respondent-appellee.*

HUNTER, Judge.

Pam and Dan McDonald, Alex Porter, Jr., Patricia Ann Hyde, H. Edward Eubanks, Jr., Richard Thomason, Forrest and Tracey

Ballard, Patrick C. Quinn, and Kip and Faith Lyon ("petitioners") appeal the superior court's decision affirming the City of Concord's ("the City") grant of a conditional use permit ("CUP") to Cabarrus County ("the County") for the construction of a correctional facility adjacent to downtown Concord. After careful consideration, we affirm.

On 25 October 2005, the County submitted to the City's Development Service Department an application for a CUP and site plan approval authorizing the County to construct a Sheriff's Department and Detention Facility on slightly more than ten (10) acres in the City. The facility is referred to as a "Law Enforcement Center" ("LEC"), and we refer to it as such in this opinion as well. The LEC would include three buildings: A sheriff's Operations/ Administration Building, an Annex, and a Jail House and Support Building. The LEC would go in across from the existing jail and would be located within the portion of the site zoned central city. The remainder of the site, which is not being developed, is zoned residential compact.

Under the City's Unified Development Ordinance ("the ordinance"), the request to issue the CUP was first sent to the Planning and Zoning Commission. That commission approved the CUP on 22 February 2006. The decision was appealed to the City Council ("the Council"). Under the ordinance, the Council heard the matter *de novo* to determine if six criteria set forth in § 6.2.7 of the ordinance were satisfied. In this appeal, however, only one criterion, set out below, is challenged: "The proposed conditional use conforms to the character of the neighborhood, considering the location, type, and height of buildings or structures and the type and extent of landscaping and screening on the site."

The Council held a public hearing on the application on 9 May 2006. The hearing was conducted as a quasi-judicial procedure. The Council concluded that each of the six criteria had been met and granted the permit, subject to certain conditions. The Council's written order was entered on 12 May 2006. Petitioners appealed the Council's order by *certiorari* to the superior court. That court affirmed the Council's decision, and petitioners appeal from that order.

Petitioners present the following issues for this Court's review: (1) whether the superior court erred in affirming the Council's decision; and (2) whether the superior court erred in determining that the Council's decision was not arbitrary and capricious.

## McDONALD v. CITY OF CONCORD

[188 N.C. App. 278 (2008)]

I.

**[1]** Petitioners first argue that the superior court erred in concluding that the City had competent, material, and substantial evidence that the LEC met the City's ordinance standard relating to its conformity with the surrounding residential homes. We disagree.

When a city council issues a CUP, its action constitutes a quasi-judicial decision that is subject to review by a superior court via *certiorari. Sun Suites Holdings, LLC v. Board of Alderman of Town of Garner*, 139 N.C. App. 269, 271, 533 S.E.2d 525, 527 (2000). The superior court then sits as an appellate court and not a trier of fact. *Id.* The task of the superior court includes: (1) reviewing the record for errors of law, (2) ensuring that procedures specified by law in both the statute and ordinance are followed, (3) ensuring that appropriate due process rights of a petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents, (4) ensuring that decisions of town boards are supported by competent, material, and substantial evidence in the whole record, and (5) ensuring that decisions are not arbitrary and capricious. *Id.* at 272, 533 S.E.2d at 527.

The applicable standard of review for the superior court depends upon the type of error assigned. *Id.* at 272, 533 S.E.2d at 527-28. In the instant case, petitioners asserted that the Council's decision was not supported by the evidence or was arbitrary and capricious. Under such circumstances, the superior court must apply the " 'whole record' test." *Id.* Under this test, the superior court examines the entire record to determine whether it contains substantial evidence to support the locality's decision. *Id.* at 273, 533 S.E.2d at 528. " 'The "whole record" test does not allow the reviewing court to replace the [b]oard's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.*' " *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 14, 565 S.E.2d 9, 17-18 (2002) (citation omitted).

In turn, this Court reviews the superior court's order to: " '(1) determin[e] whether the [superior] court exercised the appropriate scope of review and, if appropriate, (2) decid[e] whether the court did so properly.' " *Id.* at 14, 565 S.E.2d at 18 (citations omitted). In this case, there is no dispute that the superior court utilized the appropriate standard of review. Thus, this Court must determine whether the superior court erred in finding substantial evidence in the record to

support. the Council's decision. *MCC Outdoor, LLC v. Town of Franklinton Bd. of Comm'rs*, 169 N.C. App. 809, 811, 610 S.E.2d 794, 796 (2005). We review the superior court's finding of substantial evidence *de novo. Id.*

> " ' "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [I]t "must do more than create the suspicion of the existence of the fact to be established. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." ' "

*Id.* (citations omitted).

Petitioners only challenge the Council's finding that the LEC meets the following standard: "The proposed conditional use conforms to the character of the neighborhood, considering the location, type, and height of buildings or structures and the type and extent of landscaping and screening on the site."

In determining whether this standard was met, if we find that the Council had before it " 'two reasonably conflicting views, even though the [superior] court could justifiably have reached a different result had the matter been before it *de novo*[,]' " the order of the superior court will be affirmed. *Mann Media, Inc.*, 356 N.C. at 14, 565 S.E.2d at 17-18 (citation omitted).

The central dispute between the parties is over whether the LEC will "conform" with the surrounding "neighborhood." Under the ordinance, the Council is required to use Webster's Third New International Dictionary (unabridged) (1993) (hereafter "Webster's") to define those terms. Therefore, we do the same.[1]

There are several definitions given for the term "neighborhood" within Webster's. We find the second and fourth definitions to appropriately define "neighborhood" in the context of this case.[2] In rele-

---

1. Because we are required to use Webster's Dictionary to define the term "neighborhood," we note that this case is of limited precedential value in defining that term.

2. In our view, the first definition of "neighborhood" contained in Webster's is not useful in determining the outcome of this case. It states that a neighborhood is a "friendly association with another that is a neighbor[.]" Webster's Third New International Dictionary (unabridged) (1993). Because this definition does not pertain to geographical areas, we do not find it applicable in the case at bar. We also reject the third definition, which defines a neighborhood as "the approximate area or point of the location or position of something" or as an approximate amount, as it is too vague. *Id.*

vant part, the fourth definition describes the features associated with a neighborhood. Webster's Third New International Dictionary (unabridged) (1993). Specifically, a neighborhood is "a number of people forming a loosely cohesive community within a larger unit (as a city, town)[.]" *Id.* The definition goes on to state that a neighborhood is a "particular section or district[,]" which includes similar homes and public establishments. The second definition, which defines the term as "the quality or state of being immediately adjacent or relatively near to something[,]" describes the geographical boundaries of a neighborhood. *Id.* As the second and fourth definitions combine to describe both features and geography of a neighborhood, we utilize them in conjunction to define the term.

As stated above, the Council was required to find that the LEC would "conform" with the "neighborhood." Webster's defines "conform" as something having "the same shape, outline, or contour" as something else or "in agreement or harmony" with something else. *Id.* The ordinance itself provides that consideration should be given to "the location, type, and height of buildings or structures and the type and extent of landscaping and screening on the site." With these definitions in mind, we now address whether the Council was presented with substantial evidence that the LEC would conform to the surrounding neighborhood.

The City argues that they have produced substantial evidence that the LEC conforms with the surrounding neighborhood. We agree.

The LEC would be located on the southeastern tip of the zone that includes City Hall, the old courthouse, the new courthouse, the current jail, the Sheriff's office, the Board of Elections building, the county office building, and the main post office. Accordingly, the LEC will conform in use inasmuch as many of the buildings in the neighborhood involve governmental activities. Additionally, the Council heard testimony from Jonathan Marshall, Cabarrus County Commerce Director, that "[t]he jail and the sheriff's office is and has historically been located in downtown Concord adjacent to the courthouse and has always been a member of the neighborhood." Judge William Hamby made a similar point when he testified that "a jail . . . has been on a downtown Concord site for nearly two centuries, almost the entire time that Concord has been here." Finally, the portion of the LEC that is zoned as residential compact, immediately adjacent to some of petitioners' homes, will not be developed.

As to the architecture of the proposed LEC, the original design called for precast concrete. However, the plans were altered to use "red brick, basically about the same color brick as you find on the Hotel Concord." Moreover, an architect explained that the hotel "was one of the buildings that we looked at locally to try to match materials and colors." The building would be designed with large windows, decorative brick panels, and other features such that "you can compare it to the old Concord High School, something like that, a civic building along that character."

As to the size, or "footprint," of the LEC, the annex building would be between 23,000 and 24,000 square feet, the Sheriff's Office and Administration Building would be between 73,000 and 75,000 square feet, and the main Jail House and Support Building would be approximately 188,000 square feet. By comparison, the existing courthouse is an estimated 75,000 square feet. In summation, the architect on the project testified that the size of the LEC would be "consistent with the relative sizes of these buildings, some bigger, some smaller but consistent[.]"

With respect to the height of the buildings, they are approximately the same height as the existing buildings in the city center zoning district. The Sheriff's Office and Administration building would be only seven or eight feet taller than the existing courthouse. The Annex would be shorter than the Tribune Building which stands between the Annex and Union Street. Finally, the Jail House, although it would be the tallest building in the area, is situated on a downhill slope so that the top of the building will actually be sixteen feet lower than the existing courthouse.

As to screening, the Council added a condition on the CUP that a "buffer yard at or near the perimeter of the property wherever the County's property abuts contiguous residential property" must be implemented. The buffer "would be a minimum starting at 50 feet in width and would have a requirement of different shade trees and ornamental trees with a complete visual separation . . . within a three-year period." Additionally, the entire portion of the property that adjoins residentially used properties will remain subject to a conservation easement that will prohibit it from being developed.

The petitioners, however, do not focus on the center city zoning district but instead focus on the adjacent residential areas. The footprint of the LEC would be twenty-eight times the size of the average home within 500 feet of it. Additionally, the LEC would be sur-

McDONALD v. CITY OF CONCORD

[188 N.C. App. 278 (2008)]

rounded on three sides by residential areas. Obviously, the use of the jail is inconsistent with residential use. That said, there was testimony before the Council that the area surrounding the LEC has maintained a jail for nearly two centuries, and that both the jail and the sheriff's office have historically been located in downtown Concord "and ha[ve] always been a member of the neighborhood." Moreover, as stated above, the area adjoining the residential areas will remain undeveloped.

In summation, the City has presented substantial evidence that the LEC would conform to the surrounding neighborhood. We find especially relevant that the historical use, size, and style of the buildings proposed match the historical use, size, and style of the existing buildings in the city center zoning district, which has always abutted residential areas. The fact that petitioners have presented contrary evidence does not alter our analysis. As we stated above, " '[t]he "whole record" test does not allow the reviewing court to replace the [b]oard's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.*' " *Mann Media, Inc.*, 356 N.C. at 14, 565 S.E.2d at 17-18. Petitioners' assignment of error as to this issue is therefore rejected.

II.

**[2]** Petitioners' final argument is that the Council's decision granting the conditional use permit was arbitrary and capricious. We disagree.

Decisions will " ' "be reversed as arbitrary or capricious if they are 'patently in bad faith,' or 'whimsical' in the sense that 'they indicate a lack of fair and careful consideration' or 'fail to indicate []any course of reasoning and the exercise of judgment.[]' " ' " *Id.* at 16, 565 S.E.2d at 19 (citations omitted). In the instant case, there is simply no evidence that the Council's decision was whimsical or taken in bad faith. Instead, the Council held a hearing on the issue, where it received sworn testimony and evidence. The fact that evidence could have supported a different outcome does not lend support to petitioners' argument that the Council acted in an arbitrary and capricious manner. Accordingly, petitioners' assignment of error as to this issue is rejected.

III.

In summary, this Court affirms the ruling of the superior court as there was substantial evidence that the planned LEC would conform to the surrounding neighborhood. Additionally, petitioners have not

shown that the Council acted in an arbitrary or capricious manner in granting the CUP.

Affirmed.

Judges WYNN and JACKSON concur.