MANN MEDIA, INC., DOING BUSINESS AS OUR STATE NORTH CAROLINA; AND
BERNARD MANN, PETITIONERS v. RANDOLPH COUNTY PLANNING BOARD,
RESPONDENT

No. 116A01

(Filed 28 June 2002)

**Zoning— special use permit—broadcast tower—whole record test**

An application of the whole record test reveals that the trial court erred by reversing respondent planning board's decision to deny petitioners' special use permit application to construct a broadcast tower, because: (1) petitioners failed to meet their burden of proving that the proposed use would not materially endanger public safety; and (2) petitioners failed to establish that the use would not substantially injure the value of adjoining or abutting property.

Justice BUTTERFIELD dissenting.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 142 N.C. App. 137, 542 S.E.2d 253 (2001), affirming a judgment entered 17 August 1999 by Spainhour, J., in Superior Court, Randolph County. Heard in the Supreme Court 16 May 2001.

MANN MEDIA, INC. v. RANDOLPH CTY. PLANNING BD.

[356 N.C. 1 (2002)]

*Keziah, Gates & Samet, L.L.P., by Andrew S. Lasine, for petitioner-appellees.*

*Gavin Cox Pugh Etheridge and Wilhoit, LLP, by Alan V. Pugh and Robert E. Wilhoit, for respondent-appellant.*

EDMUNDS, Justice.

Petitioners Mann Media, Inc. and Bernard Mann (Mann) instituted this action against respondent Randolph County Planning Board to review respondent's denial of petitioners' application for a special use permit to construct a 1,500-foot broadcast tower in Randolph County, North Carolina. In this appeal, we must consider both whether the superior court correctly concluded that there was no competent, material, and substantial evidence to support respondent's decision to deny petitioners' special use permit application and whether the Court of Appeals properly affirmed the superior court's decision. For the reasons that follow, we hold that the superior court erred in reversing respondent's decision to deny petitioners' special use permit application to construct the broadcast tower, and therefore we reverse the Court of Appeals.

Petitioners initially applied for a special use permit to construct a 1,879-foot broadcast tower on an approximately 119.52-acre tract of land in northeast Randolph County zoned for residential/agricultural use. On 10 November 1998, respondent held a public hearing on petitioners' application and thereafter voted to deny petitioners' request.

On 17 December 1998, petitioners filed a petition for writ of certiorari with the Superior Court, Randolph County, pursuant to N.C.G.S. § 153A-345, requesting review of the denial of their application. The petition was allowed, and after a hearing in the matter, a superior court judge entered an order on 17 February 1999 vacating respondent's decision to deny the permit and remanding the case to respondent for a hearing *de novo* on the ground that respondent "did not specify the reasons for the denial of the Special Use Permit in the minutes of the meeting at which the action was taken."

On 20 May 1999, petitioners filed a second application for a special use permit. In this application, petitioners modified their original plans and sought to construct a shorter, 1,500-foot tower in the same location. Respondent held a second public hearing in the matter on 10 June 1999, during which petitioner Mann and Ron Crowder, a North

Carolina real estate appraiser, testified on behalf of petitioners. Mann's testimony addressed safety issues, particularly whether the tower could collapse and whether ice could build up on the tower and fall off, while Crowder's testimony was directed toward whether the proposed use would substantially injure the value of adjoining or abutting properties and whether the proposed use would be in harmony with the general area. John Burkett, Rita Mintmier, Terry Davis, and Julia Davis, landowners and residents near the proposed site; Grace Steed, a North Carolina realtor; and Danny Frazier, a North Carolina building contractor, testified in opposition to petitioners' application.

At the conclusion of the hearing, respondent unanimously voted to deny the special use permit, and in a subsequent written order dated 24 June 1999, respondent denied petitioners' application. This order listed as findings of fact:

1. The applicant applied for a special use permit to allow the construction of [a] 1500' broadcast tower on a 119.52 acres tract located at the Northwest side of the intersection of Lewis Davis Road and Davis Country Road, New Market Township. Said tract is zoned Residential Agricultural.

2. The applicant does not own the land for which the permit is requested.

3. The proposed tower is to be constructed for speculative purposes, there being no contracts or leases for the use of the proposed tower, all in direct contravention of the applicant's testimony at the first public hearing. The Board therefore finds that the proposed use is not a public necessity nor required to provide broadcast service for the Piedmont-Triad area.

4. The proposed tower is located within 1500 feet of 21 established residences and there are numerous other residences located in proximity to the proposed tower.

5. Conflicting evidence was presented concerning the probability of ice forming on and falling from the proposed tower, but the Board finds that ice has formed and fallen from the other towers within the county's zoning jurisdiction causing damage and is likely to do so from the proposed tower, and would therefore materially endanger the public safety <u>where located</u> because of the number and density of adjoining residences.

MANN MEDIA, INC. v. RANDOLPH CTY. PLANNING BD.

[356 N.C. 1 (2002)]

6. Evidence was presented showing that the site for the proposed tower was approved by the Federal Aviation Agency, but opposed by the Aviation Division of the North Carolina Department of Transportation. The Board finds that the construction of this tower could therefore constitute a hazard to general aviation operating from Johnson Air Field, and thus endangers the public safety.

7. The population density of the area immediately adjacent to and in the proximity of the site for the proposed tower is substantially greater than that of areas surrounding sites for towers which have been previously approved by this Board for Special Use Permits.

8. The population density of the Residential Agricultural zoning district within Randolph County varies widely in general, but is of lower density in areas adjacent to tall telecommunication towers constructed after the adoption of the Unified Development Ordinance, and therefore this proposed site being in a high density RA district because of its size, visual impact and lighting and further because the required conditions and specifications set out in the ordinance are insufficient to harmonize this particular site (emphasis added) with the area, it is therefore not in harmony with the area.

9. Conflicting testimony was presented as to whether the issuance of the permit and the construction of the tower would substantially diminish the value of adjacent properties. The Board finds that the value of adjacent properties to the proposed site would substantially diminish and would be injured if the special use permit were issued.

10. The applicant met the required conditions and specifications for such use as set out in the Unified Development Ordinance, pursuant to General Standard No. 2 but such conditions and specifications are not dispositive as to a proposed site in an area of higher residential population density in a[n] RA District.

Respondent then concluded:

1. The [proposed] use will material[ly] endanger the public safety if located where proposed, and developed according to the plan as submitted and approved. . . .

2. The proposed use will substantially injure the value of adjoining or abutting property, and the use is not a public necessity. . . .

3. The location and character of the use if developed according to the plan as submitted and approved will not be in harmony with the area in which it is to be located.

On 14 July 1999, petitioners filed a second petition for writ of certiorari, requesting the superior court "to review the record de novo for errors of law, to determine if competent, material, and substantial evidence exists, based on the whole record, to support the decision, and to determine whether the decision was arbitrary and capricious." The writ of certiorari was allowed on the same day, 14 July 1999, and following a hearing, a superior court judge entered a judgment on 17 August 1999 that vacated respondent's 24 June 1999 order and remanded the matter for entry of an order granting petitioners a special use permit. The court listed as findings of fact:

1. Petitioners[] applied for a Special Use Permit to locate a 1,500[-]foot broadcast tower in Randolph County, North Carolina.

2. Petitioners' proposed use is a permitted use in the zoning district in which the broadcast tower is proposed to be located. The decision to allow a broadcast tower as a permitted use in the zoning district in question was made by the Randolph County Board of County Commissioners in enacting the zoning ordinance for Randolph County.

3. Petitioners' proposed use meets all required conditions and specifications of the Randolph County Zoning Ordinance and the Planning Board.

4. The location and height of the proposed broadcast tower was approved by the Federal Aviation Administration which concluded that the proposed tower would not have any substantial adverse effect upon the safe and efficient utilization of the navigable air space by aircraft or on the operation of navigational facilities and would not be a hazard to air navigation.

5. The North Carolina Department of Transportation comments objecting to Petitioners' proposed tower did not relate to a hazard resulting from Petitioners' proposed tower, but to a proposed tower in a different location.

6. Petitioners' proposed broadcast tower does not constitute a hazard to air traffic.

7. Petitioners' proposed broadcast tower incorporates mechanisms to prevent the formation of ice on the tower itself.

8. Ice which may form on the support wires of the proposed tower will tend to slide down the support wires to the tower anchors but, in any event would not detach and land at a distance from the tower any greater than the distance from the tower base to the anchors, which is a distance of 900 feet.

9. No residences, structures, or property are located within 900 feet of the tower base.

10. An existing television broadcast tower is presently located in the immediate vicinity of Petitioners' proposed tower. This existing tower exceeds 2,000 feet in height.

11. The location of Petitioners' proposed tower and the surrounding area is zoned residential/agricultural.

12. The area surrounding Petitioners' proposed tower is largely agricultural.

13. No market evidence exists to support a substantial injury to adjoining or abutting property values as a result of existing broadcast towers in the vicinity of Petitioners' proposed broadcast tower.

14. Petitioners' proposed tower would have no substantial adverse effect on the value of adjoining or abutting properties.

15. Although residential housing exists in the vicinity of Petitioners' proposed tower, based on the presence of other broadcast towers in the area, the agricultural nature of the area, and the zoning, Petitioners' proposed use will be in harmony with the area in which it is to be located and in general conformity with the land development plan for Randolph County and the Randolph County Zoning Ordinance.

Based on these findings of fact, the superior court made the following conclusions of law:

1. This Court's review of the Randolph County Planning Board's Order of June 24, 1999, and the record of its proceeding was pursuant to a Writ of Certiorari issued by this Court and pur-

**MANN MEDIA, INC. v. RANDOLPH CTY. PLANNING BD.**

[356 N.C. 1 (2002)]

suant to the statutory authority set forth in N.C. General Statute §153A-345[.]

2. Petitioners[] presented competent, material, and substantial evidence establishing the conditions required by the Randolph County Zoning Ordinance for the issuance of the Special Use Permit for which Petitioners applied and demonstrating that the proposed use will not materially endanger the public health or safety if located where proposed and developed according to the plan as submitted and approved, that the proposed use meets all required conditions and specifications, that the use will not substantially injure the value of adjoining or abutting property, and that the location and character of the use if developed according to the plan as submitted and approved will be in harmony with the area in which it is to be located and in general conformity with the land development plan for Randolph County.

3. The Randolph County Planning Board's determination and reliance on the number of residences within 1,500 feet of the Petitioners' proposed tower does not relate to any standard in the Randolph Zoning Ordinance and is therefore arbitrary and capricious as a matter of law.

4. No competent, material, or substantial evidence was presented to the Randolph County Planning Board establishing or tending to establish any relevancy of a 1,500[-]foot zone measured from the base of Petitioners' proposed tower.

5. The Planning Board's reliance on density comparisons between the location of Petitioners' proposed tower and existing towers in the vicinity of Petitioners' proposed tower which are not specified in the Randolph County Zoning Ordinance was arbitrary and capricious and constituted error as a matter of law.

6. Testimony presented to the Planning Board concerning alleged incidents at other towers involving ice damage was not based on personal knowledge, but was based on hearsay, to which Petitioners objected, and was therefore incompetent.

7. Testimony presented to the Planning Board concerning alleged incidents at other towers involving ice damage did not establish the distance from those towers at which ice allegedly fell, causing damage, or whether ice allegedly causing damage fell from towers which incorporated mechanisms to prevent the for-

mation of ice, such as those which would be incorporated into Petitioners' tower, and was therefore incompetent.

8. The Planning Board's reliance on the foregoing testimony concerning alleged incidents at other towers involving ice damage was therefore arbitrary and capricious and constituted error, as a matter of law.

9. No competent, material, or substantial evidence was presented that Petitioners' proposed broadcast tower constitutes a hazard to air traffic.

10. Testimony in opposition to Petitioners' proposed tower from property owners whose property did not adjoin or abut the location of the proposed tower regarding the perceived impact on property values as a result of the proposed tower was incompetent, and the Planning Board's reliance on this testimony was therefore arbitrary and capricious and constituted error as a matter of law.

11. The Planning Board's reliance on testimony in opposition to Petitioners' proposed tower concerning property values for property in the vicinity of existing towers which did not identify the properties to which it referred, any material aspect of those properties, the alleged impact on those property values, and which did not relate the testimony to property values of property adjoining or abutting Petitioners' proposed tower location was arbitrary and capricious and constituted error as a matter of law.

12. Because Petitioners' proposed use is a permitted use within the zoning district in which it is proposed to be located, it is in harmony with the area in which it is to be located as a matter of law.

13. Petitioners[] presented competent, material, and substantial evidence satisfying the requirements of the Randolph County Zoning Ordinance.

14. The Randolph County Planning Board failed to act based on competent, substantial, and material evidence in denying Petitioners' Special Use Permit Application and therefore acted arbitrarily and capriciously.

15. Petitioners' Application for a Special Use Permit should have been allowed by the Randolph County Planning Board.

Respondent appealed to the North Carolina Court of Appeals. In a split decision, that court, focusing on whether the proposed use was in harmony with the area in which it was to be located and whether the proposed use would substantially injure the value of property adjoining or abutting the proposed site, held that petitioners met their burden for approval of the special use permit application and that respondent's order denying the special use permit was not supported by competent, material, and substantial evidence. Accordingly, the Court of Appeals affirmed the superior court's judgment that vacated respondent's order and remanded the matter to respondent for entry of an order allowing petitioners' special use permit application. The dissenting judge disagreed, arguing:

> From a review of the record and the findings of the Board, I conclude there was competent material and substantial evidence to support the denial of the special use permit and I would reverse the order of the trial court and remand the case for entry of an order affirming the decision of the Board.

*Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 142 N.C. App. 137, 144, 542 S.E.2d 253, 258 (2001) (Walker, J., dissenting). Respondent appeals to this Court from the decision of the Court of Appeals on the basis of the dissent.

## SPECIAL USE PERMITS

A county has the authority to regulate and restrict the use of property pursuant to section 153A-340 of the North Carolina General Statues, which provides in pertinent part:

> (a) For the purpose of promoting health, safety, morals, or the general welfare, a county may regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, res- idence, or other purposes, and to provide density credits or sev- erable development rights for dedicated rights-of-way pursuant to G.S. 136-66.10 or G.S. 136-66.11.

> . . . .

> (c) The regulations may provide that a board of adjustment may determine and vary their application in harmony with their general purpose and intent and in accordance with general or

specific rules therein contained. The regulations may also provide that the board of adjustment or the board of commissioners may issue special use permits or conditional use permits in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified therein and may impose reasonable and appropriate conditions and safeguards upon these permits. Where appropriate, the conditions may include requirements that street and utility rights-of-way be dedicated to the public and that recreational space be provided. When issuing or denying special use permits or conditional use permits, the board of commissioners shall follow the procedures for boards of adjustment except that no vote greater than a majority vote shall be required for the board of commissioners to issue such permits, and every such decision of the board of commissioners shall be subject to review by the superior court by proceedings in the nature of certiorari.

N.C.G.S. § 153A-340(a), (c) (2001). A county may create a planning agency to perform the zoning duties of a board of adjustment, N.C.G.S. § 153A-344(a) (2001); N.C.G.S. § 153A-345(a) (2001), including issuing special use permits to "permit special exceptions to the zoning regulations in classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified in the ordinance," N.C.G.S. § 153A-345(c).

A special use permit is "one which is expressly permitted in a given zone upon proof that certain facts and conditions detailed in the ordinance exist." *Application of Ellis*, 277 N.C. 419, 425, 178 S.E.2d 77, 80 (1970). " 'It does not entail making an exception to the ordinance but rather permitting certain uses which the ordinance authorizes under stated conditions.' " *Woodhouse v. Board of Comm'rs of Nags Head*, 299 N.C. 211, 218, 261 S.E.2d 882, 887 (1980) (quoting with approval *Syosset Holding Corp. v. Schlimm*, 15 Misc. 2d 10, 11, 159 N.Y.S.2d 88, 89 (N.Y. Sup. Ct. 1956), *modified on other grounds*, 4 A.D.2d 766, 164 N.Y.S.2d 890 (1957)). "It is granted or denied after compliance with the procedures prescribed in the ordinance." *Humble Oil & Ref. Co. v. Board of Aldermen of Chapel Hill*, 284 N.C. 458, 467, 202 S.E.2d 129, 135 (1974).

Respondent is a planning agency appointed by the Randolph County Board of Commissioners, performing the functions of the board of adjustment in accordance with N.C.G.S. § 153A-345(a). "The Zoning Ordinance of Randolph County, North Carolina" (the Ordinance)

MANN MEDIA, INC. v. RANDOLPH CTY. PLANNING BD.

[356 N.C. 1 (2002)]

is designed to encourage the protection and development of the various physical elements of the county in accordance with a comprehensive plan of land use and population density and for the purpose of promoting the public health, safety, morals and general welfare; promoting the orderly development of the county, preventing the overcrowding of land; and regulating the location and use of structures and land for trade, industry, residences or other purposes except farming.

It provides that a special use permit may be granted by respondent, noting that:

Permitting Special Uses adds flexibility to the Zoning Ordinance. Subject to high standards of planning and design, certain property uses are allowed in the several districts where these uses would not otherwise be acceptable. By means of controls exercised through the Special Use Permit procedures, property uses which would otherwise be undesirable in certain districts can be developed to minimize any bad effects they might have on surrounding properties.

One special use set out in the Ordinance is for "Public Utilities[] (Substations, Transformers, Radio or T.V. Towers, etc.)," which may be located in an area zoned residential/agricultural.

Pursuant to section 4.2 of the Ordinance, respondent must find four factors before granting a special use permit. These factors are:

(1) that the use will not materially endanger the public health or safety if located where proposed and developed according to the plan as submitted and approved;

(2) that the use meets all required conditions and specifications;

(3) that the use will not substantially injure the value of adjoining or abutting property, or that the use is a public necessity; and

(4) that the location and character of the use if developed according to the plan as submitted and approved will be in harmony with the area in which it is to be located and in general conformity with the Land Development Plan for Randolph County.

The Ordinance further provides that if respondent fails to find any factor and "denies the Special Use Permit, it shall enter the

reason for its action in the minutes of the meeting at which the action is taken."

## STANDARD OF REVIEW

A county planning board must follow a two-step decision-making process in granting or denying an application for a special use permit. If "an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it." *Humble Oil & Ref. Co. v. Board of Aldermen of Chapel Hill*, 284 N.C. at 468, 202 S.E.2d at 136. If a *prima facie* case is established, "[a] denial of the permit [then] should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record." *Id.*

The county planning board sits in a quasi-judicial capacity when determining whether to grant or deny a special use permit and

must insure that an applicant is afforded a right to cross-examine witnesses, is given a right to present evidence, is provided a right to inspect documentary evidence presented against him and is afforded all the procedural steps set out in the pertinent ordinance or statute. Any decision of the town board has to be based on competent, material, and substantial evidence that is introduced at a public hearing.

*Coastal Ready-Mix Concrete Co. v. Board of Comm'rs of Nags Head*, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980). "Its findings of fact and decisions based thereon are final, subject to the right of the courts to review the record for errors in law and to give relief against its orders which are arbitrary, oppressive or attended with manifest abuse of authority." *Humble Oil & Ref. Co. v. Board of Aldermen of Chapel Hill*, 284 N.C. at 469, 202 S.E.2d at 137. The board, however, "is 'without power to deny a permit on grounds not expressly stated in the ordinance' and it must employ specific statutory criteria which are relevant." *Woodhouse v. Board of Comm'rs of Nags Head*, 299 N.C. at 218-19, 261 S.E.2d at 887 (quoting 3 Robert M. Anderson, *American Law of Zoning 2d* § 19.19, at 425 (1977)).

While the county board operates as the finder of fact, a reviewing superior court "sits in the posture of an appellate court" and "does not review the sufficiency of evidence presented to it but reviews that evidence presented to the town board." *Coastal Ready-Mix Concrete*

*Co. v. Board of Comm'rs of Nags Head,* 299 N.C. at 626-27, 265 S.E.2d at 383. In general, the superior court's task when reviewing the grant or denial by a county board of a special use permit includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Id.* at 626, 265 S.E.2d at 383. "The proper standard for the superior court's judicial review 'depends upon the particular issues presented on appeal.' " *ACT-UP Triangle v. Commission for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quoting *Amanini v. N.C. Dep't of Human Res.*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994)). "When the petitioner 'questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the "whole record" test.' " *Id.* (quoting *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993)). However, " '[i]f a petitioner contends the [b]oard's decision was based on an error of law, "de novo" review is proper.' " *Sun Suites Holdings, LLC v. Board of Aldermen of Garner*, 139 N.C. App. 269, 272, 533 S.E.2d 525, 527-28 (quoting *JWL Invs., Inc. v. Guilford Cty. Bd. of Adjust.*, 133 N.C. App. 426, 429, 515 S.E.2d 715, 717, *disc. rev. denied*, 351 N.C. 357, 540 S.E.2d 349 (1999)), *disc. rev. denied*, 353 N.C. 280, 546 S.E.2d 397 (2000). "Moreover, '[t]he trial court, when sitting as an appellate court to review a [decision of a quasi-judicial body], must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review.' " *Id.* at 272, 533 S.E.2d at 528 (quoting *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 342 (1999)) (alterations in original).

These standards of review are distinct. Under a *de novo* review, the superior court "consider[s] the matter anew[] and freely substitut[es] its own judgment for the agency's judgment." *Sutton v. N.C.*

*Dep't of Labor*, 132 N.C. App. at 389, 511 S.E.2d at 341. When utilizing the whole record test, however, the reviewing court must " 'examine all competent evidence (the "whole record") in order to determine whether the agency decision is supported by "substantial evidence." ' " *ACT-UP Triangle v. Commission for Health Servs.*, 345 N.C. at 706, 483 S.E.2d at 392 (quoting *Amanini v. N.C. Dep't of Human Res.*, 114 N.C. App. at 674, 443 S.E.2d at 118). "The 'whole record' test does not allow the reviewing court to replace the [b]oard's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.*" *Thompson v. Wake Cty. Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977).

Finally, when an appellate court reviews

a superior court order regarding an agency decision, "the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly."

*ACT-UP Triangle v. Commission for Health Servs.*, 345 N.C. at 706, 483 S.E.2d at 392 (quoting *Amanini v. N.C. Dep't of Human Res.*, 114 N.C. App. at 675, 443 S.E.2d at 118-19) (citation omitted in original). Accordingly, we now consider whether the superior court exercised the appropriate standard of review and, if so, whether it employed that standard properly. We also review decisions of the Court of Appeals for error of law, N.C. R. App. P. 16(a), and in addition must determine if the Court of Appeals correctly applied the standards set forth above.

ANALYSIS

In their petition for writ of certiorari to the superior court, petitioners contended that

[t]he decision of the Planning Board is therefore unsupported by competent, material, and substantial evidence, based on the whole record, is arbitrary and capricious, and is subject to errors of law[].

WHEREFORE, Petitioner[s] respectfully pray that this Court issue a Writ of Certiorari to the Randolph County Planning Board

requiring that the record pertaining to its decision be certified to the Court for de novo review; reverse the decision of the Planning Board as (i) erroneous as a matter of law, (ii) unsupported by competent, material, and substantial evidence, and (iii) arbitrary and capricious . . . .

Petitioners' incorporation of the language of both standards of review in its petition was not improper because "[a] court may properly employ both standards of review in a specific case." *Sun Suites Holdings, LLC v. Board of Aldermen of Garner*, 139 N.C. App. at 273, 533 S.E.2d at 528. However, "the standards are to be applied separately to discrete issues," *id.* at 274, 533 S.E.2d at 528, and the reviewing superior court must identify which standard(s) it applied to which issues, *id.* at 272, 533 S.E.2d at 528. Here, the superior court stated in its judgment that it reviewed the matter

pursuant to a Writ of Certiorari entered in this cause to determine if there were errors of law and if the Order was supported by competent, material, or substantial evidence or was arbitrary and capricious, based on the whole record; and after reviewing de novo the record of the Randolph County Planning Board certified to this Court, the verbatim transcript of the proceedings, and considering the arguments of counsel and legal authority submitted, this Court makes the following FINDINGS OF FACT . . . .

Although this statement indicates that the superior court employed a *de novo* standard of review, many of the court's conclusions of law state that respondent's determinations were "arbitrary and capricious and constituted error as a matter of law," language that is consistent with both *de novo* and whole record review. *See Amanini v. N.C. Dep't of Human Res.*, 114 N.C. App. at 674, 443 S.E.2d at 118. Such wording suggests that the superior court applied both standards simultaneously in several instances, leaving us unable to conclude that the superior court consistently exercised the appropriate scope of review. We do not believe a remand is necessary, however, because the central issue presented by respondent and argued by both parties on appeal is whether there was competent, material, and substantial evidence to support respondent's denial of a special use permit. Resolution of this issue involves evaluation of evidence used by respondent to deny the application, and the entire record of the hearing is before us. *See Sun Suites Holdings, LLC v. Board of Aldermen of Garner*, 139 N.C. App. at 274, 533 S.E.2d at 528-29 ("petitioners raise only the issue of whether the [b]oard's denial of the application

was supported by the record, the entirety of which is before us"; therefore, remand was unnecessary). Accordingly, and in the interests of judicial economy, we apply the "whole record" test as we review the matter.

As set out above, section 4.2 of the Ordinance sets out four criteria that must be satisfied before a special use permit can be issued. The first of these is "that the use will not materially endanger the public health or safety if located where proposed and developed according to the plan as submitted and approved." One of respondent's findings was that

[c]onflicting evidence was presented concerning the probability of ice forming on and falling from the proposed tower, but the Board finds that ice has formed and fallen from the other towers within the county's zoning jurisdiction causing damage and is likely to do so from the proposed tower, and would therefore materially endanger the public safety where located because of the number and density of adjoining residences.

Under the whole record test, this finding must stand unless it is arbitrary and capricious.

[I]n determining whether an agency decision is arbitrary or capricious,

the reviewing court does not have authority to override decisions within agency discretion when that discretion is exercised in good faith and in accordance with law.

The "arbitrary or capricious" standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are "patently in bad faith," [*Burton v. City of Reidsville*, 243 N.C. 405, 407, 90 S.E.2d 700, 702 (1956),] or "whimsical" in the sense that "they indicate a lack of fair and careful consideration" or "fail to indicate []any course of reasoning and the exercise of judgment.[]" [*State ex rel.] Comm'r of Ins. v. [N.C.] Rate Bureau*, 300 N.C. [381,] 420, 269 S.E.2d [547,] 573 [(1980)].

*Lewis v. N.C. Dep't of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989).

*ACT-UP Triangle v. Commission for Health Servs.*, 345 N.C. at 707, 483 S.E.2d at 393.

In this finding, respondent cited evidence of ice building up and falling from other towers. Our review of the record indicates that this evidence, consisting principally of ice brought before respondent in a cooler and anecdotal hearsay, was not competent. Even so, the record also indicates that petitioners failed to carry their burden of proving that the potential of ice falling from support wires of the proposed tower was not a safety risk. Petitioner Mann testified that while the tower itself would have deicing equipment, the support wires would not. Although he opined that any ice forming on the wires would slide down the wires, he candidly acknowledged his inability to state with certainty that ice would not travel a greater distance in the event of wind or storm. While Mann argued that the prevailing winds at the site are from a direction that would blow any ice away from nearby buildings and dwellings, he could not guarantee that falling ice would not be a risk. Other evidence in the record shows that numerous permanent structures lie in close proximity to the proposed tower site.

Respondent's finding that petitioners failed to establish that there would be no danger to the public from falling ice is neither whimsical, nor patently in bad faith, and it is not indicative of a lack of any course of reasoning or exercise of judgment. The burden is on petitioners to meet the four requirements of the Ordinance before finding that a *prima facie* case has been established, and respondent did not state in its written order that petitioners made a *prima facie* case. Under the whole record test, in light of petitioners' inability satisfactorily to prove that the proposed use would not materially endanger public safety, we are not permitted to substitute our judgment for that of respondent. Accordingly, we hold that petitioners failed to meet their burden of proving this first requirement and did not establish a *prima facie* case.

Because of this holding, we are not obligated to address the remaining three requirements under the Ordinance. *See Coastal Ready-Mix Concrete Co. v. Board of Comm'rs of Nags Head*, 299 N.C. at 632-33, 265 S.E.2d at 386 ("[i]n light of this holding [that the petitioner's proposed concrete plant violated the height requirements of the Nags Head zoning ordinance], it is unnecessary to reach [the respondents'] remaining two contentions" that the petitioner failed to provide public access to the proposed plant in violation of the ordinance and that the petitioner could not meet the spirit and intent requirements of the ordinance). Nonetheless, in the interests of completeness, we briefly consider the remaining requirements under the Ordinance.

Although the parties do not contest that petitioners have satisfied the second requirement that the use "meet[] all required conditions and specifications," the third requirement provides "that the use will not substantially injure the value of adjoining or abutting property." As to this requirement, petitioners presented the testimony of North Carolina real estate appraiser Ron Crowder. Like the superior court, the Court of Appeals accepted petitioners' evidence as substantial and competent, while rejecting the testimony of North Carolina realtor Grace Steed and North Carolina building contractor Danny Frazier, both of whom testified in opposition to petitioners' application. As to Steed and Frazier, the Court of Appeals concluded that neither was able to provide examples of adverse affect on property adjoining or abutting the proposed tower site and thus provided only speculative opinions. However, even though Crowder acknowledged at the public hearing that property was not frequently sold in the vicinity, and as a result he also did not review any actual comparable property adjoining or abutting the proposed tower, the Court of Appeals held that "because petitioners' appraiser is a professional appraiser whose skill was acknowledged even by the opponent realtor described above, we hold that his expert opinion will satisfy the requirement for competent, material and substantial evidence despite our holding in *Sun Suites*." *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 142 N.C. App. at 142, 542 S.E.2d at 257. In *Sun Suites*, the Court of Appeals held that the testimony of two speakers at the public hearing failed to constitute substantial evidence because neither "presented any 'factual data or background,' such as certified appraisals or market studies, supporting their naked opinions." *Sun Suites Holdings, LLC v. Board of Aldermen of Garner*, 139 N.C. App. at 278, 533 S.E.2d at 531 (quoting *Humble Oil & Ref. Co. v. Board of Aldermen of Chapel Hill*, 284 N.C. at 469, 202 S.E.2d at 136). Although the Court of Appeals here correctly noted that Steed and Frazier failed to address *adjoining or abutting* properties, the testimony of Crowder was similarly deficient. Because none of this testimony addressed the specific requirement of the Ordinance as to "adjoining or abutting property," we find that the Court of Appeals erred in accepting Crowder's testimony while rejecting that of Steed and Frazier. Consequently, under the whole record test, we hold that petitioners failed to meet the Ordinance's third requirement.

The fourth requirement under the Ordinance provides "that the location and character of the use if developed according to the plan as submitted and approved will be in harmony with the area in which it is to be located and in general conformity with the Land

Development Plan for Randolph County." The superior court properly applied *de novo* review to this issue, and the Court of Appeals discussed this requirement in some detail. We agree with the Court of Appeals that " '[t]he inclusion of a use as a conditional use in a particular zoning district establishes a prima facie case that the permitted use is in harmony with the general zoning plan.' " *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 142 N.C. App. at 139, 542 S.E.2d at 255 (quoting *Vulcan Materials Co. v. Guilford Cty. Bd. of Cty. Comm'rs*, 115 N.C. App. 319, 324, 444 S.E.2d 639, 643, *disc. rev. denied*, 337 N.C. 807, 449 S.E.2d 758 (1994)). However, in the case at bar, because we have determined that petitioners failed to establish a *prima facie* case as to requirements one and three as required by the Ordinance, we need not address whether sufficient evidence was presented to rebut petitioners' *prima facie* showing that the plan was in harmony with the surrounding area.

Based upon the foregoing, we reverse the decision of the Court of Appeals and remand this case to the Court of Appeals, which shall remand to the Superior Court, Randolph County, with directions to that court to enter judgment affirming respondent's denial of the special use permit.

REVERSED AND REMANDED.

Justice BUTTERFIELD dissenting.

This case is before this Court solely on the basis of the dissenting opinion in the Court of Appeals. Challenging the majority's holding with regard to the issue of harmony, the dissenting judge in the Court of Appeals concluded, "There was plenary evidence before the Board that [the proposed] tower would be located adjacent to an existing mixed suburban/agricultural area and would not be in harmony with this area." *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 142 N.C. App. 137, 144, 542 S.E.2d 253, 258 (2001) (Walker, J., dissenting). Because the dissent did not specifically address the issues regarding public safety or property values, the only issues squarely before us are (1) whether petitioners presented competent, material, and substantial evidence that the proposed use would be in harmony with the area in which it is to be located; and (2) if so, whether there existed in the record competent, material, and substantial evidence contrary to petitioners' showing of harmony to support the Board's denial of petitioners' permit application. I agree with the holding of the majority of the Court of Appeals that petitioners made a *prima*

*facie* showing of harmony and that the record contained insufficient evidence to sustain the Board's adverse conclusion. Therefore, I respectfully dissent.

As this Court recognized in *Woodhouse v. Board of Comm'rs of Nags Head*, 299 N.C. 211, 261 S.E.2d 882 (1980):

> "The inclusion of the particular use in the ordinance as one which is permitted under certain conditions[] is equivalent to a legislative finding that the prescribed use is one which is in harmony with the other uses permitted in the district' "

> A. Rathkopf, 3 *Law of Zoning and Planning*, 54-5 (1979).

*Woodhouse*, 299 N.C. at 216, 261 S.E.2d at 886. In other words, "[a] conditional use is a permitted use when allowed under a special permit. Thus, there has been a local legislative determination that the use, as such, is neither inconsistent with the public health, safety, morals, or general welfare, nor out of harmony with the [county's] general zoning plan." 3 Arden H. Rathkopf & Daren A. Rathkopf, *Rathkopf's The Law of Zoning and Planning* § 61:20, at 61-42 (Edward H. Zeigler, Jr., ed., 2001).

> Furthermore, the denial of an application on grounds that the proposed plan "does not meet the tests of suitability" as outlined in the intent section of a particular ordinance is no different from refusing a permit because the proposed use would "adversely affect the public interest." A [county planning board] "cannot deny applicants a permit in their unguided discretion or, stated differently, refuse it solely because, in their view, [it] would " 'adversely affect the public interest.' " *In re Application of Ellis*, 277 N.C. [419,] 425, 178 S.E.2d [77,] 81 [(1970)].

*Woodhouse*, 299 N.C. at 216-17, 261 S.E.2d at 886 (second alteration in original).

Notably, the majority accepts the Court of Appeals' pronouncement that " '[t]he inclusion of a use as a conditional use in a particular zoning district establishes a prima facie case that the permitted use is in harmony with the general zoning plan.' " *Mann Media, Inc.*, 142 N.C. App. at 139, 542 S.E.2d at 255 (quoting *Vulcan Materials Co. v. Guilford Cty. Bd. of Cty. Comm'rs*, 115 N.C. App. 319, 324, 444 S.E.2d 639, 643, *disc. rev. denied*, 337 N.C. 807, 449 S.E.2d 758 (1994)). Therefore, by showing that the Randolph County ordinance

denominates radio and television broadcast towers as special uses within Residential-Agricultural districts, petitioners have made a *prima facie* showing that their proposed use would be in harmony with the surrounding area. Nonetheless, in denying petitioners' application, the Board concluded that "[t]he location and character of the use if developed according to the plan as submitted and approved [would] not be in harmony with the area in which it is to be located." Specifically, the Board found that the proposed tower would be inharmonious with the surrounding properties because the population density of the area adjacent to the proposed site was "substantially greater" than that of areas surrounding "previously approved" towers. Aerial maps of the proposed tower and the Channel 2 television tower comprised the evidence supporting this conclusion. A comparison of the two maps showed that a residential subdivision was under construction in an area bordering the proposed site and that the area surrounding the Channel 2 tower was predominantly rural. The transcript of the hearing further reveals concerns that an additional tower would result in "over-saturation" and, thereby, upset the existing harmony of property uses within the area.

However, under the *Woodhouse* standard, the Randolph County ordinance's designation of broadcast towers as permitted uses within residential-agricultural districts is equal in effect to a "legislative finding" that such towers are compatible with residential communities. *See Woodhouse*, 299 N.C. at 216, 261 S.E.2d at 886. Therefore, to conclude that the proposed tower would be incompatible with the area solely because of its proximity to a densely populated residential subdivision is at odds with the intent expressed in the ordinance. Because I believe that the Board's determination as to harmony was not supported by competent, material, and substantial evidence, I vote to affirm the decision of the Court of Appeals.