NO. COA14-208

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

JOHN F. DONNELLY, JR.,
Petitioner/Appellant,

v.                                    Iredell County
                                      No. 13 CVS 848

UNIVERSITY OF NORTH CAROLINA,
BOARD OF GOVERNORS OF THE
UNIVERSITY OF NORTH CAROLINA, and
UNIVERSITY OF NORTH CAROLINA AT
CHAPEL HILL PUBLIC SAFETY
DEPARTMENT, Respondents/Appellees.


    Appeal by petitioner from judgment entered on 4 November
2013 by Judge W. David Lee in Iredell County Superior Court.
Heard in the Court of Appeals 14 August 2014.


    *RECH LAW, P.C., by Kate A. Rech for petitioner-appellant.*

    *Attorney General Roy Cooper, by Assistant Attorney General
    Matthew Tulchin, for respondent-appellee.*


    STEELMAN, Judge.


    A decision by an administrative agency to indefinitely ban
petitioner from all University of North Carolina athletic
facilities did not violate petitioner's First Amendment rights.
The ban was not arbitrary, capricious, or unsupported by
substantial evidence, and therefore did not violate N.C. Gen.

Stat. § 150B-51. University officials did not misuse their power to retaliate against petitioner.

## I. Factual and Procedural Background

John Donnelly, Jr. (petitioner) graduated from the University of North Carolina (UNC) in 1970 and has always been a dedicated fan of the school's sports teams. Petitioner frequently attended UNC athletic events and volunteered as an usher for the 2006 football season. From 2006 until December 2012, in a series of incidents, petitioner displayed inappropriate behavior toward several UNC athletes and staff members of the UNC Athletics Department. Petitioner was reprimanded for his behavior several times prior to UNC imposing upon him a lifetime ban from UNC athletic events. This appeal arises from petitioner's appeal of this ban.

Petitioner made sexually suggestive comments to female UNC Athletics staff members, traveled to UNC women's soccer matches and appeared at the hotel where the players were staying and harassed the players, and alienated fans by openly criticizing players in front of their family members during the game while serving as an usher and representative of UNC Athletics. Petitioner also harassed staff members by repeatedly calling various UNC Athletics offices up to 13 times per day.

The events that led to the lifetime ban arise from an incident that occurred in December 2012 at the Women's Soccer College Cup tournament in San Diego. Petitioner had previously attempted to communicate with several female soccer players both in person and via Facebook. At the Soccer College Cup, petitioner found out which hotel the players were staying, allegedly "because he won an autographed soccer ball and couldn't locate the head coach's signature on the ball." Petitioner claims that he wanted to find the head coach so he could locate his signature on the ball. The parents of the players felt uncomfortable with petitioner's uninvited presence at the hotel, especially given his previous attempts to communicate with several female players. Petitioner was asked to leave, and did so.

As a result of petitioner's persistent harassment of UNC Athletics staff members and athletes, and history of inappropriate behavior at athletic events, on 3 December 2012, UNC issued a Notice of Trespass to petitioner. The Notice prohibited petitioner from entering any area of UNC Athletic Facilities at any time in the future. The Notice was sent to petitioner via certified mail. One week later, George Hare (Hare), Deputy Chief of the UNC Department of Public Safety, called petitioner, explained the Notice of Trespass, and

discussed the parameters of the restriction with petitioner. Petitioner was informed of his right to appeal, and he exercised that right.

On 7 March 2013, Hare issued a Final University Decision denying petitioner's appeal of the Notice of Trespass. On 4 April 2013, petitioner filed a Petition for Review of Final Agency Decision, seeking judicial review of the University's decision in the Superior Court of Iredell County. On 4 November 2013, Judge Lee found that, "no substantial rights of the petitioner have been prejudiced and that the final decision of the University should be affirmed."

Petitioner appeals.

## II. First Amendment Rights

In his first argument, petitioner contends that the trial court erred in affirming UNC's indefinite ban from all athletic facilities because UNC violated his First Amendment rights. We disagree.

## A. Standard of Review

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
> (1) In violation of constitutional provisions;
> (2) In excess of the statutory

> authority or jurisdiction of the agency or administrative law judge;
> (3)  Made upon unlawful procedure;
> (4)  Affected by other error of law;
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
> (6)  Arbitrary, capricious, or an abuse of discretion.
> (c)  In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review of the final decision using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.

N.C. Gen. Stat. § 150B-51 (2013).

"Under a *de novo* review, the superior court 'consider[s] the matter anew[] and freely substitut[es] its own judgment for the agency's judgment.'" *Mann Media, Inc. v. Randolph Cnty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (quoting *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 341 (1999)). "When an appellate court reviews a superior court order regarding an agency decision, 'the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1)

determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.'" 356 N.C. at 14, 565 S.E.2d at 18.

### B. Analysis

"The first inquiry a court must undertake when a First Amendment claim is asserted is whether the plaintiff has engaged in 'protected speech'." *Goulart v. Meadows*, 345 F.3d 239, 246 (4th Cir. 2003) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797, 87 L.Ed.2d 567, 576 (1985)). While it is well-recognized that the First Amendment protects more than spoken or written word, the United States Supreme Court has rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Texas v. Johnson*, 491 U.S. 397, 404, 105 L. Ed. 2d 342 (1989) (quoting *United States v. O'Brien*, 391 U.S. 367, 376, 20 L.Ed.2d 672 (1968)). "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Id.* (quoting *Spence v. State of Wash.*, 418 U.S. 405, 410-11, 41 L.Ed.2d 842 (1974)).

The United States Supreme Court has recognized that students wearing black armbands to protest military involvement in Vietnam, sit-ins to protest segregation, and picketing about a wide variety of causes are behaviors that are protected by the First Amendment. *Id.* (citing *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 505, 21 L.Ed.2d 731 (1969); *Brown v. Louisiana*, 383 U.S. 131, 141–42, 15 L.Ed.2d 637 (1966); *United States v. Grace, 461 U.S. 171, 176, 75 L.Ed.2d 736* (1983)).

The Fourth Circuit held that harassment is not protected speech. *Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988) (holding that a West Virginia statute prohibiting use of the telephone to harass others did not violate the First Amendment, as the statute required specific intent to harass, thus indicating that the legislature sought to criminalize conduct rather than speech by protecting citizens from harassment in an evenhanded and neutral fashion).

We hold that petitioner has failed to demonstrate that he engaged in any speech protected by the First Amendment. Petitioner harassed athletes, the family members of athletes, athletic staff members, and fans. This behavior is not protected by the First Amendment. Therefore, we do not address

petitioner's argument that UNC athletic facilities are a public forum.

This argument is without merit.

### III. N.C. Gen. Stat. § 150B-51 Violations

In his second argument, petitioner contends that the trial court erred in affirming UNC's indefinite ban from all athletic facilities because UNC's decision was arbitrary, capricious, and unsupported by substantial evidence, in violation of N.C. Gen. Stat. § 150B-51. We disagree.

### A. Standard of Review

As described in Section II A, above, the appropriate standard of review for this argument is the whole record test.

"When utilizing the whole record test, however, the reviewing court must examine all competent evidence (the "whole record") in order to determine whether the agency decision is supported by substantial evidence." *Mann Media, Inc. v. Randolph Cnty. Planning Bd.*, 356 N.C. 1, 14, 565 S.E.2d 9, 17 (2002) (quoting *ACT-UP Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (internal quotation marks omitted).

### B. Analysis

An administrative ruling is deemed arbitrary and capricious when it is "whimsical, willful[,] and [an] unreasonable action without consideration or in disregard of facts or law or without determining principle." *Ward v. Inscoe*, 166 N.C. App. 586, 595, 603 S.E.2d 393, 399 (2004) (*quoting Lenoir Mem. Hosp. v. N.C. Dep't of Human Res.*, 98 N.C. App. 178, 181, 309 S.E.2d 448, 450 (1990)). When a court applies the whole record test, it must determine whether there is substantial evidence to justify the agency's decision. *In re Lustgarten*, 177 N.C. App. 663, 670, 629 S.E.2d 886, 890-91 (2006). Substantial evidence is "relevant evidence a reasonable mind might accept as adequate to support a conclusion." *Id.*

UNC's decision to ban petitioner from all athletic facilities indefinitely was not arbitrary, capricious, nor was it unsupported by substantial evidence. A decision by an administrative agency is arbitrary and capricious if it clearly lacked fair and careful consideration. *Bio-Med. Applications of N. Carolina, Inc. v. N. Carolina Dep't of Human Res., Div. of Facility Servs., Certificate of Need Section*, 136 N.C. App. 103, 111, 523 S.E.2d 677, 682 (1999).

UNC's decision was based on a series of incidents over a number of years where petitioner engaged in inappropriate behavior toward UNC athletes, the family members of athletes,

athletic staff members, and fans. This was not the first time that petitioner was reprimanded for this type of behavior. The Final University Decision summarizes a long series of events which led to the indefinite ban. It is clear that UNC's decision was not an "unreasonable action without consideration or in disregard of facts," nor did the decision lack "relevant evidence a reasonable mind might accept as adequate to support a conclusion."

Petitioner also argues that UNC violated N.C. Gen. Stat. § 150B-51 because UNC officials did not follow the procedure set forth in the Department of Public Safety's General Order on trespass warnings. The General Order states that:

> I. Trespass Warning
>
> A. After determining that a person has no legitimate business or education purpose in a University facility or on University property, a formal "Notice of Trespass," which is valid indefinitely, may be issued. The Notice should be precise enough to alleviate any question as to the specific restrictions being imposed.
>
> B. The information contained in the "Notice of Trespass" should be read to the offender. Any questions from the offender should be answered if possible. Issuance of the notice should be witnessed by another officer. The notice should be signed by the violator or "Refused" should be written by the officer if the violator doesn't cooperate.
>
> II. Right of Appeal

The offender should be informed of his/her right of appeal.

UNC determined petitioner had no legitimate business or educational purpose on university property due to his pattern of inappropriate behavior and issued a Notice of Trespass that clearly stated the restrictions imposed. The information contained in the Notice was discussed with petitioner via telephone and sent via certified mail. Petitioner was also informed of his right to appeal.

Petitioner argues that because four lines on the Notice of Trespass were left blank (date, time, witness name, and witness signature), UNC officials did not follow proper procedure. This Court has stated that:

> In determining the mandatory or directory nature of a statute, the importance of the provision involved may be taken into consideration. Generally speaking, those provisions which are a mere matter of form, or which are not material, do not affect any substantial right, and do not relate to the essence of the thing to be done so that compliance is a matter of convenience rather than substance, are considered to be directory.

*State v. Inman*, 174 N.C. App. 567, 570, 621 S.E.2d 306, 309 (2005) (quoting *State v. House*, 295 N.C. 189, 203, 244 S.E.2d 654, 661–62 (1978)).

Petitioner's argument is based on provisions of the General Order that are a mere matter of form, are not material, and do

not affect any substantial right. The procedure set forth in the General Order is based on the assumption that there will be immediate, on-site removal of trespassers. In the instant case, the events leading up to a Notice of Trespass being issued against petitioner occurred off-site, at a soccer tournament in California. UNC made minor, but necessary, changes to its normal procedure to accommodate the nature of this particular incident. Nonetheless, UNC substantially complied with the goals of the General Order. The goals of the General Order are to inform the trespasser of the restrictions imposed upon him and inform him of his right to appeal. Both of these goals were met.

Any procedural error committed by UNC officials was therefore harmless and immaterial.

This argument is without merit.

## IV. Retaliation Claim

In his third argument, petitioner contends that UNC's indefinite ban was an abuse of discretion because officials misused their power to retaliate against petitioner. We disagree.

## A. Standard of Review

As described in Section II A, above, the appropriate standard of review for this argument is the whole record test.

"When utilizing the whole record test, however, the reviewing court must examine all competent evidence (the "whole record") in order to determine whether the agency decision is supported by substantial evidence." *Mann Media, Inc. v. Randolph Cnty. Planning Bd.*, 356 N.C. 1, 14, 565 S.E.2d 9, 17 (2002) (quoting *ACT-UP Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (internal quotation marks omitted).

## B. Analysis

Petitioner argues that the case of *Trulock v. Freeh* is applicable to the instant case. *Trulock v. Freeh* is a Fourth Circuit case involving a former Department of Energy official who wrote a magazine article charging the government with incompetence for their handling of alleged security breaches at weapons laboratories. *Trulock v. Freeh*, 275 F.3d 391, 397 (4th Cir. 2001). In that case, the court held that because "The First Amendment guarantees an individual the right to speak freely, including the right to criticize the government and government officials," public officials are "prohibited from retaliating against individuals who criticize them." *Id.* at 404.

The issues in the instant case do not parallel the issues in the case petitioner cites for this argument. The instant case

does not involve the criticism of governmental officials. Therefore, *Trulock v. Freeh* is not controlling, nor do we find it to be persuasive authority.

This argument is without merit.

AFFIRMED.

Judge GEER concurs.

Judge HUNTER, Robert N., Jr. concurs in result.

NO. COA14-208

NORTH CAROLINA COURT OF APPEALS

Filed: 2 September 2014

JOHN F. DONNELLY, JR.,
    Petitioner/Appellant,

    v.                                    Iredell County
                                          No. 13 CVS 848
UNIVERSITY OF NORTH CAROLINA,
BOARD OF GOVERNORS OF THE
UNIVERSITY OF NORTH CAROLINA, and
UNIVERSITY OF NORTH CAROLINA AT
CHAPEL HILL PUBLIC SAFETY
DEPARTMENT,
    Respondents/Appellees.


        HUNTER, JR., Robert N., Judge, concurring in the result.


        While I concur with the majority's result, I am troubled that the majority only briefly references *United States v. O'Brien*, 391 U.S. 367 (1968) without applying all four prongs of the test announced in that case.

        Under the First Amendment and the North Carolina Constitution, speech is given broad protections, save for certain exceptions. *See United States v. Stevens*, 559 U.S. 460, 468 (2010) (holding that "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct" are exceptions that do not receive First Amendment protections (internal citations omitted)); *Ashcroft v. American Civil*

*Liberties Union*, 535 U.S. 564, 573 (2002) ("[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." (citation and quotation marks omitted)); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, 54 (1988) ("At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern. . . . Of course, this does not mean that *any* speech about a public figure is immune from sanction in the form of damages."); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 383-84 (1992) (holding that exceptions to the First Amendment include, but are not limited to, obscenity, threats, and communications that incite lawless action); *see also* N.C. Const. art. I, § 14.

Conduct, however, may be regulated, as "[i]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Hest Technologies, Inc. v. State* ex rel. *Perdue*, 366 N.C. 289, 296, 749 S.E.2d 429, 435 (2012), *cert. denied*, ___ U.S. ___, 134 S. Ct. 99 (2013)

(quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978)).

The majority opinion cites the *O'Brien* test, which recognized that in some cases there is not a clear distinction between speech and conduct. *O'Brien* concerned a man who intentionally and illegally burned his draft card, but did so as a form of protest against the draft. 391 U.S. at 369-70. The Court explained that "when 'speech' and 'nonspeech' elements are combined in the same *course of conduct*, a sufficiently important governmental interest in regulating the nonspeech element *can* justify incidental limitations on First Amendment freedoms." *Id.* at 376 (emphasis added). The United States Supreme Court then articulated a four-prong test to determine whether government regulation of a course of conduct involving speech is constitutional:

> [1] a government regulation is sufficiently justified if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377.

Here, it is essential to explain why Donnelly's actions

should be considered conduct and not speech, thus bringing his actions under the *O'Brien* standard. This case provides a prime example of the gray area between speech and conduct and thus application of *all* four *O'Brien* factors is appropriate. Although some of Donnelly's individual actions, such as sending an e-mail or making a phone call may be classified as speech, Donnelly's repeated calls, suggestive and inappropriate comments, and other actions combine to become harassing conduct. Taken together, Donnelly's actions constitute a "course of conduct," and *O'Brien* applies.

The power of UNC officials to regulate harassment on campus satisfies the first two prongs of the *O'Brien* test as it is (i) within the power and (ii) in the interest of UNC administrators to provide a safe environment for students. While UNC is preventing Donnelly from engaging in his free speech rights at future UNC athletic events, record evidence shows that (iii) UNC is seeking to protect its students and employees from his harassing and inappropriate behavior instead of intending to quash Donnelly's right to speak freely. Under the fourth and final prong, (iv) the restriction placed on Donnelly is not greater than is essential to promote UNC's legitimate interest. The University previously disciplined Donnelly to a lesser

extent and notified him of the inappropriateness of his behavior, but these measures failed to stop Defendant's harassing behavior. For these reasons, the actions of UNC administrators against Donnelly satisfy all four criteria of the *O'Brien* test and Donnelly's behavior is not protected by the First Amendment.