In Re Appeal of HPB Enterprises of a Decision of the North Carolina Department of Insurance Dated June 18, 2004

No. COA05-1260

(Filed 15 August 2006)

## 1. Appeal and Error— trial court review of agency—standard of review not stated

Although the trial court did not state the standard of review applied to a Department of Insurance decision, petitioner properly assigned error and argued the issue, and the record was reviewed de novo to determine if the court erred by affirming the Department of Insurance's interpretation of hurricane restrictions.

## 2. Insurance—hurricane restriction—renewal of lapsed policy

Petitioner did not have the automatic right to continue an expired insurance policy by submitting the proper application and paying the premiums, and an underwriting restriction on new coverage during a hurricane period applied.

Appeal by petitioner from order and judgment entered 28 February 2005 and order entered 25 May 2005 by Judge James C. Spencer in Wake County Superior Court. Heard in the Court of Appeals 11 May 2006.

*Hornthal, Riley, Ellis & Maland, L.L.P., by L.P. Hornthal, Jr., and Manning, Fulton & Skinner, by Michael S. Harrell, for petitioner-appellant.*

*Cranfill, Sumner & Hartzog, by Meredith T. Black, for respondent-appellee.*

ELMORE, Judge.

The North Carolina Insurance Underwriting Association (the Association) issued a wind damage insurance policy to HPB Enterprises (petitioner), the owner of Albemarle Plantation, beginning in 1999. On or about 5 May 2003, the Association mailed an Expiration Notice and Application for Continuation of Coverage to the SIA Group, the insurance agent for petitioner, stating that the policy would expire on 1 August 2003. A subsequent Notice of Expiration was mailed directly to petitioner on or about 12 May 2003 advising that the policy would expire on 1 August 2003 unless the Association received an applica-

tion for coverage and premium. Petitioner's policy expired on 1 August 2003 because no application for renewal policy and premium had been received.

The Association follows a Plan of Operation setting forth the procedures and requirements for obtaining coverage. The Plan of Operation must be approved by the North Carolina Department of Insurance. On 14 September 2003, a hurricane writing restriction contained within the Plan of Operation became effective due to the proximity of Hurricane Isabel off the North Carolina coast. The hurricane writing restriction provided:

> Plan of Operation revision approved effective May 16, 2003. No new or increased coverage shall be bound or application for new or increased coverage accepted for properties located in the State of North Carolina, when the center of a designated hurricane is located within longitudes 65% West and 85% West and latitudes 20% North and 37% North. The term "designated hurricane" is a windstorm designated as a hurricane by the National Weather Service. Coverage may be accepted in unusual situations that must be individually approved and must be called to the attention of the Plan Manager.

On 15 September 2003, petitioner's insurance agent called the Association to inquire about reinstating petitioner's policy. Petitioner's agent stated that he could physically deliver the application for continuation of coverage to the Association's offices by 17 September 2003. However, the Association's representative indicated that the policy would not be reinstated for so long as Hurricane Isabel was within the coordinates identified in the Association's restrictions. Petitioner mailed the application on 17 September 2003.

On 18 September 2003, Hurricane Isabel hit the North Carolina coast, causing damage to petitioner's property. The hurricane writing restriction was lifted on 19 September 2003. The Association received petitioner's application and premium on 19 September 2003. The Plan of Operation defines the effective date of coverage as "the date a properly completed application and premiums are received in the Association's office." In accordance with this provision, coverage for petitioner became effective on 19 September 2003.

Petitioner sought coverage for the damage incurred on 18 September 2003 as a result of Hurricane Isabel, and the claim for coverage was denied by the Association. Petitioner then appealed to the

Association's Appeals Committee, which issued a decision on 27 October 2003 upholding the denial of coverage. Petitioner filed a notice of appeal to the North Carolina Department of Insurance (the Department of Insurance). The Department of Insurance entered an order dated 18 June 2004 upholding the denial of petitioner's claim. Petitioner filed a Petition for Judicial Review of the Department of Insurance decision on 20 July 2004. On 28 February 2005, the superior court entered an order and judgment affirming the decision of the Department of Insurance. Petitioner filed a motion to amend the order with additional findings. On 25 May 2005 the trial court entered an order containing additional findings. Petitioner filed a notice of appeal to this Court on 21 June 2005.

Upon reviewing a superior court order affirming or reversing an administrative agency decision, this Court must determine if the trial court applied the appropriate standard of review and, if so, whether the court applied that standard properly. *In re Appeal by McCrary*, 112 N.C. App. 161, 165-66, 435 S.E.2d 359, 363 (1993).

> The proper standard for the superior court's judicial review depends upon the particular issues presented on appeal. . . . When the petitioner questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the whole record test. . . . However, if a petitioner contends the board's decision was based on an error of law, de novo review is proper. . . . Moreover, the trial court, when sitting as an appellate court to review a decision of a quasi-judicial body, must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review.

*Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (internal quotations and citations omitted).

[1] Foremost, we note that the trial court did not state the standard of review in its orders. However, this Court can determine from the record whether the Division of Insurance's decision should be affirmed. "[A]n appellate court's obligation to review a superior court order for errors of law . . . can be accomplished by addressing the dispositive issue(s) before the agency and the superior court without examining the scope of review utilized by the superior court." *Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjust.*, 146 N.C. App. 388, 392, 552 S.E.2d 265, 268 (2001) (Greene, Judge, dissenting), *adopted per curiam by* 355 N.C. 269, 559 S.E.2d 547 (2002). In reviewing the su-

perior court's order, this Court "need only consider those grounds for reversal or modification raised by the petitioner before the superior court and properly assigned as error and argued on appeal to this Court." *Shackleford-Moten v. Lenoir Cty. DSS*, 155 N.C. App. 568, 572, 573 S.E.2d 767, 770 (2002), *disc. review denied*, 357 N.C. 252, 582 S.E.2d 609 (2003). In the Petition for Judicial Review, petitioner excepted .to the Department of Insurance's conclusion that the Association's hurricane writing restriction barred coverage for petitioner from becoming effective until 19 September 2003. Petitioner has properly assigned error to this issue and argued it on appeal. Thus, we now review the record *de novo* to determine if the trial court erred in affirming the Department of Insurance's interpretation of the hurricane writing restrictions contained within the Association's Plan of Operation.

[2] Petitioner contends that the trial court erred in affirming the Division of Insurance's determination that the reinstatement of its expired insurance policy constituted the making of new or increased coverage that was barred by the hurricane writing restriction. The trial court entered the following conclusions on this point:

> 3. By virtue of the clear language contained in its timely received Application for Continuation of Coverage, [petitioner] had proper notice that the Association's hurricane writing restrictions applied to expired policies if coverage had not been approved and the required premium paid as of the effective date of the restrictions.

> 5. Even if the Association had received [petitioner's] application and premium between September 14 and September 19, 2003, coverage could not have been incepted during that time due hurricane writing restrictions properly in effect in accordance with Association procedures.

The record reflects that petitioner received a notice of expiration from the Association that advised an expired policy may be subject to the hurricane coverage writing restrictions. More specifically, at the top of the application for coverage, the Association stated "coverage writing restrictions may apply to new applications and expired or canceled policies if there is a hurricane located within the coordinates of longitudes 65 degrees west and 85 degrees west, and latitudes 20 degrees north and 37 degrees north, and your coverage has not been approved or your premiums have not been paid to the Association." Consideration of this language in the notice is not

determinative of the issue, however, as the Plan of Operation sets the guidelines for coverage.

The hurricane writing restriction in the Plan of Operation states that no "new or increased coverage" shall be accepted for policies when the center of a designated hurricane is located between the coordinates specified. Thus, whether the Association could approve coverage for petitioner during the period when the writing restriction was effective, 14 September through 18 September 2003, depends upon the type of coverage petitioner applied for. Petitioner contends that its policy was not "new" because the Association was going to reinstate its policy using the same policy number and with identical policy limits except for one category of coverage. Also, petitioner asserts, the application it submitted in applying for coverage was the form application utilized by the Association for policy renewals, not for new policies. Thus, petitioner essentially argues that when an application for coverage is contained on a form for policy renewals and the Association uses the same policy number when coverage is effectuated, that policy cannot possibly be for "new or increased" coverage.

The Association points out, however, that using the same policy number is merely a matter of convenience and does not negate the fact that petitioner's coverage expired on 1 August 2003. Also, the Plan of Operation permits an applicant to submit an application for continued coverage where new coverage is initiated within sixty days of the expiration of prior coverage. Under these circumstances, the Association may approve coverage without conducting an additional full inspection into the applicant. We agree with the Association that petitioner's use of the application for continued coverage and the Association's use of the previous policy number does not automatically exempt the policy from the hurricane writing restriction. Instead, our analysis is guided by the language of the Plan of Operation—a set of regulations drafted by the Association and approved by the Department of Insurance. See N.C. Gen. Stat. § 58-45-30 (2005).

The Plan of Operation is in effect a set of administrative regulations, as it must be approved by the Department of Insurance. See N.C. Gen. Stat. § 58-45-30(b) (2005) (proposed plan of operation "shall be reviewed by the Commissioner [of the Department of Insurance] and approved"; plan becomes effective 10 days after Commissioner certifies his approval). This Court has noted that "an agency's interpretation of its own regulations will be enforced unless

clearly erroneous or inconsistent with the regulation's plain language." *Hilliard v. N.C. Dep't of Corr.*, 173 N.C. App. 594, 598, 620 S.E.2d 14, 17-18 (2005). Indeed, our Supreme Court has explained the standard of appellate review as follows:

> When the issue on appeal is whether a state agency erred in interpreting a regulatory term, an appellate court may freely substitute its judgment for that of the agency and employ *de novo* review. . . . However, the interpretation of a regulation by an agency created to administer that regulation is traditionally accorded some deference by appellate courts.

*Britt v. N.C. Sheriffs' Educ. and Training Stds. Comm'n*, 348 N.C. 573, 576, 501 S.E.2d 75, 77 (1998) (internal citations omitted). Therefore, our review is limited to determining whether the Department of Insurance interpreted the Plan of Operation in a manner that was clearly erroneous or inconsistent with the plain language of these regulations. We determine that neither error has occurred here.

It is undisputed that petitioner had no coverage as of 14 September 2003. When the policy expired on 1 August 2003, any coverage ceased to exist. Thus, petitioner was not insured by the Association and any subsequent issuance of a policy would provide petitioner with new coverage. As the Plan of Operation states that the hurricane writing restriction applies to any "new or increased coverage," the Association could not issue coverage for petitioner until the hurricane writing restriction was lifted.

Petitioner argues nonetheless that the reinstatement of its policy after expiration did not create a new policy under North Carolina case law, citing to *Chavis v. Southern Life Ins. Co.*, 318 N.C. 259, 347 S.E.2d 425 (1986). In that case, the defendant insurance company issued a life insurance policy to the plaintiff's husband. The policy lapsed due to nonpayment of premiums by the insured. But a reinstatement provision of the policy provided that a lapsed policy could be reinstated within five years of the default on premiums by establishing insurability and paying the premiums in default. *Chavis*, 318 N.C. at 261, 347 S.E.2d at 426. The insured completed an application for reinstatement and also paid the defaulted premiums plus interest. After the insured died, the plaintiff sought to collect the proceeds as the beneficiary of the policy. The defendant denied payments and asserted that the insured had made material misrepresentations of his health on the application for reinstatement. The insurance contract between the parties contained an incontestability clause stating that

after the policy had been effective for two years, the insurer could not assert a defense to coverage other than the specified grounds. *Chaviz*, 318 N.C. at 262, 347 S.E.2d at 427. The parties did not dispute that material misrepresentations on the application for insurance was not one of these grounds. However, the defendant argued that this incontestability clause was renewed when the lapsed policy was reinstated. *Id.* at 263, 347 S.E.2d at 428. The Court disagreed, reasoning that a reinstated policy does not create a new contract between the parties:

> "The reinstatement of the policy or contract of insurance did not have the effect of creating a new contract of insurance, dating from the time of the renewal. It had the effect only of continuing in force the original contract of insurance which would, under its terms, have terminated and become void if it had not been reinstated in the manner and within the time provided in the original contract."

*Id.* at 263-64, 347 S.E.2d at 428 (quoting *Petty v. Insurance Co.*, 212 N.C. 157, 161, 193 S.E. 228, 231 (1937)).

Petitioner contends *Chavis* compels the conclusion that the reinstatement of a lapsed insurance policy does not establish "new" coverage. But *Chavis* is readily distinguishable from the instant case. In *Chavis*, the insured had a contractual right to reinstatement of a lapsed policy upon the payment of premiums in default and a showing of insurability:

> There were only two conditions precedent to reinstatement of this policy should it lapse: presentation of evidence of insurability satisfactory to the company and payment of the defaulted premiums with interest. It is undisputed that the latter condition precedent was fulfilled. The former condition was also met. Evidence was presented to the company concerning the defendant's health (i.e., insurability). The company obviously found this evidence to be satisfactory since it subsequently reinstated the lapsed policy. Since both conditions precedent were met, the policy was reinstated in law.

318 N.C. at 264, 347 S.E.2d at 429. Here, section 58-45-30 of our General Statutes governs the conditions precedent to the Association issuing an insurance policy:

> (b1) If the Association determines that the property, for which application for a homeowners' policy is made, is insurable, that

there is no unpaid premium due from the applicant for prior insurance on the property, **and that the underwriting guidelines established by the Association and approved by the Commissioner are met,** the Association, upon receipt of the premium, or part of the premium, as is prescribed in the plan of operation, shall cause to be issued a homeowners' insurance policy.

N.C. Gen. Stat. § 58-45-35(b1) (2005) (emphasis added). Thus, there are three conditions precedent to a policy being issued: (1) the property is insurable; (2) there are no outstanding unpaid premiums; and (3) the underwriting requirements of the Association have been met. The Association is not required to issue a policy unless the requirements of the Plan of Operation are satisfied. Unlike in *Chavis*, evidence of insurability and payment of premium alone does not create a right to issuance of a policy. Contrary to petitioner's assertions, it had no automatic right to continue an expired policy by submitting the proper application and paying the premiums.

The plain language of the hurricane writing restriction in the Plan of Operation applied to petitioner's application following the expiration of its policy. We hold that there were no errors of law in the trial court's orders affirming the Department of Insurance's decision that the denial of petitioner's coverage was proper. We, therefore, affirm the orders of the trial court.

Affirmed.

Judges McGEE and STEELMAN concur.