DAVIS, Judge.
This case is before this Court on remand from the Supreme Court of North Carolina. In our initial decision in this matter, we held that North Carolina law did not permit Jerry's Shell, LLC ("Jerry's Shell") to appear pro sein an administrative hearing before the Division of Motor Vehicles ("DMV") regarding its alleged violation of N.C. Gen.Stat. § 20-183.8C(d) and that, consequently, a new hearing was required in which it would be represented by legal counsel. On 19 December 2014, our Supreme Court reversed our ruling based on its decision in In re Twin County Motorsports, Inc.,367 N.C. 613, 766 S.E.2d 832 (2014). Pursuant to the Supreme Court's directive on remand, we now address the issues we did not reach in our prior opinion. These issues are whether (1) the trial court erred in failing to find that the classification of Jerry's Shell's violation as a Type II violation was arbitrary and capricious; (2) the penalties assessed by the DMV were excessive; and (3) the Commissioner and the trial court erred by failing to modify the hearing officer's decision pursuant to N.C. Gen.Stat. § 20-183.8G(f). After careful review, we affirm the trial court's order.
Factual Background
On 6 October 2011, Inspector George Bryan Hunt ("Inspector Hunt") of the License and Theft Bureau of the DMV was assigned to conduct a covert audit of Jerry's Shell. He deliberately disabled the Message Indicator Light ("MIL") bulb on a 2003 Dodge Caravan and then presented the vehicle for an emissions inspection at Jerry's Shell. Inspector Hunt observed Donald St. Charles ("St.Charles"), a licensed mechanic who was authorized to perform state emissions and safety inspections, take the keys to the vehicle and begin the inspection. St. Charles returned the vehicle after he completed the inspection and informed Inspector Hunt that it had passed the inspection. Inspector Hunt was given a "Receipt/Statement" indicating that the MIL bulb was functional and had received a "Pass." Inspector Hunt examined the Dodge Caravan immediately after St. Charles returned the vehicle and confirmed that the MIL bulb was still nonfunctional.
Based on this audit, Inspector Hunt served Jerry's Shell with a Notice of Charge, alleging that it had violated N.C. Gen.Stat. § 20-183.8C(d) by "issu [ing] an emissions electronic inspection authorization to a vehicle after performing an emission inspection with the MIL ... bulb functioning improperly or MIL bulb remaining on." St. Charles was also charged criminally for a violation of vehicle inspection law.
Todd Alligood ("Alligood"), the owner and operator of Jerry's Shell, requested an administrative hearing before the DMV upon receipt of the Notice of Charge. A hearing was held on 22 November 2011. On 10 January 2012, Hearing Officer A.G. Cody entered an Official Hearing Decision and Order determining that Jerry's Shell had committed a Type II violation and had also committed two other Type II violations within the past three years. The order directed that Jerry's Shell's emissions inspection license be suspended for 90 days and imposed a civil penalty assessment of $250.00.
Jerry's Shell requested review of the order by the Commissioner of the DMV. The Commissioner subsequently issued a final agency decision affirming the decision of the hearing officer. Jerry's Shell sought judicial review of the final agency decision in Rowan County Superior Court pursuant to N.C. Gen.Stat. § 20-183.8G(g) and Article 4 of Chapter 150B. On 19 November 2012, the trial court entered an order affirming the final agency decision.
In our 5 November 2013 opinion, we remanded the matter for a new hearing in which Jerry's Shell would be represented by counsel based on our holding that a limited liability company cannot appear pro sein an administrative proceeding before the DMV. The Supreme Court granted discretionary review and reversed our decision for the reasons stated in In re Twin County Motorsports, Inc.,367 N.C. 613, 766 S.E.2d 832 (2014). See In re Jerry's Shell, LLC,367 N .C. 612, 766 S.E.2d 340 (2014).
Analysis
When a party appeals an agency decision to superior court, the superior court's review of the decision is governed by N.C. Gen.Stat. § 150B-51, which provides, in pertinent part, as follows:
The court may affirm the decision of the agency or remand the case to the agency or the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Unsupported by substantial evidence admissible under G.S. § 150B-29(a) ; 150B-30, or 150B-31 in view of the entire record as submitted; or
(6) Arbitrary, capricious, or an abuse of discretion.
N.C. Gen.Stat. § 150B-51(b) (2011).[1] Errors asserted pursuant to subdivisions (1) through (4) of N.C. Gen.Stat. § 150B-51(b) are reviewed de novo,and errors asserted pursuant to subdivisions (5) and (6) are reviewed using the whole record test. Davis v. Macon Cty. Bd. of Educ.,178 N.C.App. 646, 652, 632 S .E.2d 590, 594, disc. review denied,360 N.C. 645, 638 S.E.2d 465 (2006).
In the present case, the trial court was reviewing the final agency decision determining that (1) Jerry's Shell committed a Type II emissions violation; (2) this violation was the third Type II violation Jerry's Shell had committed within the previous three years; and (3) the appropriate penalty for Jerry's Shell was a 90-day suspension of its emissions inspection station license and a $250.00 fine. On appeal to this Court, Jerry's Shell argues that the trial court erred in affirming the final agency decision by failing to find that (1) the determination that the inspection violation at issue was a Type II violation was arbitrary and capricious; and (2) the penalties imposed were excessive. Jerry's Shell also contends that the trial court erred in failing to conclude that the hearing officer's decision should have been modified by the Commissioner in the final agency decision pursuant to N.C. Gen.Stat. § 20-183.8G(f). We address each of these arguments in turn.
I. Type II Violation
Here, the final agency decision affirmed the hearing officer's determination that St. Charles' act of "issuing a passing result on an emissions inspection on a vehicle after performing an emissions inspection with the MIL bulb functioning improperly or the MIL bulb remaining on" constituted a Type II emissions violation under N.C. Gen.Stat. § 20-183.8C(d).[2] Jerry's Shell contends that its violation, which is not expressly described in the statute delineating the various types of violations, is more properly characterized as a less serious Type III violation and that it was arbitrary and capricious to classify it as a Type II violation. We are not persuaded.
"An administrative ruling is deemed arbitrary and capricious when it is whimsical, willful, and an unreasonable action without consideration or in disregard of facts or law or without determining principle." Donnelly v. Univ. of N.C.,--- N.C.App. ----, ----, 763 S.E.2d 154, 158 (2014) (citation, quotation marks, and brackets omitted). N.C. Gen.Stat. § 20-183.8B, the statute setting forth the specific penalties for the various types of emissions violations, "categorizes emissions violations into serious (Type I), minor (Type II), and technical (Type III) violations." N.C. Gen.Stat. § 20-183.8B(a) (2011). This statute explains that (1) a Type I violation is a "serious violation ... that directly affects the emission reduction benefits of the emissions inspection program"; (2) a Type II violation is a "minor violation ... that reflects negligence or carelessness in conducting an emissions inspection or complying with the emissions inspection requirements but does not directly affect the emission reduction benefits of the emissions inspection program"; and (3) a Type III violation is a technical violation "that is not a serious violation, a minor violation, or another type of offense under this Part." Id.
N.C. Gen.Stat. § 20-183.8C lists certain examples of specific acts that constitute emissions violations of each type. N.C. Gen.Stat. § 20-183.8C(a) -(c) (2011). However, these examples are nonexclusive. N.C. Gen.Stat. § 20-183.8C(d) clarifies that "[t]he lists in this section of the acts that are Type I, Type II, or Type III violations are not the only acts that are one of these types of violations. The Division may designate otheracts that are a Type I, Type II, or Type III violation." N.C. Gen.Stat. § 20-183.8C(d) (emphasis added).
In the appendix to its brief, the DMV included Special Order 1-2010 dated 22 January 2010, which addresses "violations stemming from covert audits."[3] In this special order, the DMV adopted a procedure for detecting this particular violation, stating that in covert audits of emissions stations "[t]he tamper set on the covert vehicles used for emissions stations is an inoperable Message Indicator Lamp (MIL)." It further ordered members of the License and Theft Bureau of the DMV to charge the inspection station civilly pursuant to N.C. Gen.Stat. § 20-183.8C(d) if the station fails to detect the tamper. While the special order does not specifically state that a violation of this nature is to be considered a Type II violation, it does expressly designate the failure to identify an inoperable MIL bulb during an inspection as an emission violation under N.C. Gen.Stat. § 20-183.8C.
As stated above, a Type II violation is a minor violation arising from carelessness or negligence in conducting the inspection and involves conduct such as issuing "an emissions electronic inspection authorization on a vehicle without performing a visual inspection of the vehicle's exhaust system and checking the exhaust system for leaks." N.C. Gen.Stat. § 20-183.8C(b)(4). Violations falling under Type III(the classification Jerry's Shell argues was more appropriate for its failure to detect the inoperable MIL bulb), on the other hand, consist of technical infractions like "fail[ing] to put the required information on an inspection receipt in a legible manner" or "fail [ing] to post an emissions license issued by the Division." N.C. Gen.Stat. § 20-183.8C(c)(1), (5).
Accordingly, the DMV's determination that the violation of failing to detect an inoperable MIL bulb during an inspection "reflects negligence or carelessness in conducting an emissions inspection" (thereby constituting a Type II violation) was not unreasonable, and the trial court did not err in affirming the DMV as to this issue. N.C. Gen.Stat. § 20-183.8B(a) ; see Bio-Medical Applications of N.C., Inc. v. N.C. Dep't of Human Res.,136 N.C.App. 103, 111, 523 S.E.2d 677, 682 (1999) (explaining that "[t]he arbitrary and capricious standard is a difficult one to meet" and agency decisions may only be reversed as arbitrary and capricious "if they are patently in bad faith, or whimsical in the sense that they indicate a lack of fair and careful consideration or fail to indicate any course of reasoning and the exercise of judgment" (citation and quotation marks omitted)).
II. Severity of Penalty
Jerry's Shell next argues that the trial court erred by failing to conclude that the penalty imposed by the Commissioner, and the economic injury likely to be suffered as a result of the suspension of its emissions inspection license, "far exceed[ed] the severity of the alleged violations." We disagree.
We first note that Jerry's Shell does not dispute the fact that it committed two other Type II violations within three years of the violation at issue. As such, the present violation was the third Type II violation by Jerry's Shell within a three-year period. Under the penalty schedule set forth in N.C. Gen.Stat. § 20-183.8B(b),
[t]he Division musttake the following action for a violation:
....
(2) Type II.For a first or second Type II violation by an emissions self-inspector or an emissions inspection station, assess a civil penalty of one hundred dollars ($100.00). For a third or subsequent Type II violation within three years by an emissions self-inspector or an emissions inspection station, assess a civil penalty of two hundred fifty dollars ($250.00) and suspend the license of the business for 90 days.
N.C. Gen.Stat. § 20-183.8B(b)(2) (emphasis added).
Here, the final agency decision imposed the precise penalty that is statutorily mandated when an emissions inspection station accumulates three Type II violations within a three-year period. This statute does not authorize the DMV to exercise any discretion when imposing penalties for such violations, instead stating that the DMV "must" follow the statutory penalty schedule set forth above in response to a violation. See Internet E., Inc. v. Duro Commc'ns, Inc.,146 N.C.App. 401, 405-06, 553 S.E.2d 84, 87 (2001) (explaining that words like "must" and "shall" are "used in laws, regulations, or directives to express what is mandatory"). As such, the trial court did not err in concluding that the penalty imposed by the DMV-the penalty that was statutorily mandated-was not excessive.
III. Modification under N.C. Gen.Stat. § 20-183.8G(f)
Finally, Jerry's Shell argues that both the Commissioner and the trial court erred by failing to modify the hearing officer's decision pursuant to N.C. Gen.Stat. § 20-183.8G(f). This argument is also without merit.
N.C. Gen.Stat. § 20-183.8G(e) gives the Commissioner the authority to review a decision when "a person designated by the Commissioner holds a hearing and makes a decision" in a particular matter, and N.C. Gen.Stat. § 20-183.8G(f) authorizes the Commissioner to modify someof these decisions in the course of his review. However, N.C. Gen.Stat. § 20-183.8G(f) also expressly provides that
[a] decision made after a hearing on the imposition of a monetary penalty ... on a Type I, II, or III emissions violation by an emissions license holder must uphold any monetary penalty, license suspension, license revocation, or warning required by G.S. 20-183.8A or G.S. 20-183.8B, respectively, if the decision contains a finding that the ... license holder committed the act for which the monetary penalty, license suspension, license revocation, or warning was imposed.
N.C. Gen.Stat. § 20-183.8G(f) (2011).
In this case, the monetary penalty and license suspension were required under N.C. Gen.Stat. § 20-183.8B, and the hearing officer's decision contained findings that Jerry's Shell actually committed the act for which the penalties were imposed. As such, the Commissioner was not permitted to modify the decision under N.C. Gen.Stat. § 20-183.8G(f) and, thus, did not err in failing to do so. Accordingly, for this reason as well, the trial court did not err in affirming the final agency decision.
Conclusion
For the reasons stated above, the trial court's 19 November 2012 order is affirmed.
AFFIRMED.
Judges CALABRIA and STROUD concur.
Report per Rule 30(e).
Opinion
Appeal by petitioner from order entered 19 November 2012 by Judge Richard L. Doughton in Rowan County Superior Court. Originally heard in the Court of Appeals 15 August 2013, with opinion filed 5 November 2013. An opinion reversing the decision of the Court of Appeals and remanding for consideration of issues not previously addressed by this Court was filed by the Supreme Court of North Carolina on 19 December 2014.

The 2011 amendments to the Administrative Procedure Act do not apply to the present case as those amendments apply to cases commenced on or after 1 January 2012. See 2011 Sess. Laws, 1678, 1689, 1701, ch. 398, §§ 27, 63.

We note that several of the statutory provisions within Article 3A of Section 20 of the North Carolina General Statutes were amended in 2013. The new versions of these statutes had not yet been enacted at the time of Jerry's Shell's violation and hearing, and, as such, we apply the prior versions that were in effect at that time.

Although Special Order 1-2010 is not included in the record on appeal, the order is a public document and we grant the DMV's request to take judicial notice of it. See Utils. Comm'n v. S. Bell Tel. & Tel. Co., 289 N.C. 286, 288, 221 S.E.2d 322, 323 (1976) ("This Court has recognized in the past that important public documents will be judicially noticed."); N.C.R. Evid. 201 (explaining that facts subject to judicial notice are those "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" and that it is appropriate to take judicial notice when "requested by a party and supplied with the necessary information").